IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD PARTY SUBPOENAS AD TESTIFICANDUM<br><br>SHILPA PHARMA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>    Defendant,<br><br>    -and-<br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>    Defendant-Counterclaim Plaintiff,<br><br>    v.<br><br>SHILPA PHARMA, INC.,<br><br>    Plaintiff-Counterclaim Defendant<br><br>    -and-<br><br>SHILPA MEDICARE LIMITED,<br><br>    Counterclaim Defendant. | Case: 1:22–mc–00110<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 11/3/2022<br>Description: Misc.<br><br>Case No. District of Delaware<br>Civil Action No. 21-558-MN |

**NON-PARTY CHIDAMBARAM S. IYER, ESQ.'S MOTION TO QUASH SUPBOENA, FOR A PROTECTIVE ORDER AND FOR SANCTIONS**

1



NOV - 3 2022

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**I. Introduction**

Chidambaram "Chid" S. Iyer, Esq. of Sughrue Mion, PLLC ("Sughrue"), litigation counsel to Shilpa Pharma, Inc. and Shilpa Medicare, Inc. (collectively "Shilpa") moves this Court for an Order quashing a deposition subpoena[1] served on him by Novartis Pharmaceuticals Corporation ("Novartis"), prohibiting his deposition, and for a protective order against all further discovery by Novartis. Alternatively, Mr. Iyer seeks a modification of the current deposition subpoena limited to a single topic – his meeting and correspondence with Novartis in early 2016 – the only topic Novartis has told the Court in Delaware it seeks to depose him on. This motion is necessary because Novartis has subpoenaed Mr. Iyer in connection with not only the very patent his client Shilpa has asserted against Novartis in the underlying litigation, pending in the District of Delaware, but more broadly in respect of his representation of Shilpa including his knowledge of Shilpa's activities in preparing for and conducting this litigation.

Litigation counsel are presumptively entitled to a protective order against being deposed by an adversary. In the present case involving Shilpa's counsel Mr. Iyer, Novartis has not overcome that presumption.

**II.     Background and Summary of Argument**

Shilpa sued Novartis for patent infringement in the U.S. District Court for the District of Delaware in April, 2021. *See Shilpa Pharma, Inc. v. Novartis Pharm's Corp.,* Civil Action No. 21-558-MN (D. Del. 2021). Shilpa's U.S. Patent No. 9,266,816 is directed to a chemical

---

[1] The subpoena is attached as Exhibit 1.

2

compound called fingolimod hydrochloride used by Novartis in the manufacture of Gilenya®, a drug Novartis commercializes to treat certain forms of multiple sclerosis. Shilpa alleges that Novartis's infringement is willful. Novartis filed counterclaims alleging "inequitable conduct" in the procurement of the '816 patent-in-suit and further alleging antitrust violations, *Walker Process* fraud, sham litigation and other related claims.[2] The antitrust and related claims have all been stayed in the District Court.

The inequitable conduct claims are directed to Shilpa and several individual employees, based on activities alleged to have occurred during prosecution of the '816 patent-in-suit.[3] Mr. Iyer did not represent Shilpa or the applicants in respect of the '207 application before the Patent Office and had no input into any aspect of its prosecution. Mr. Iyer did not begin representation of Shilpa in this matter until early 2016, contemporaneous with the patent's issuance on February 23rd of that year. The only allegations in Novartis's counterclaim directed to Mr. Iyer are that he contacted Novartis's in-house counsel Peter Waibel in February, 2016 to facilitate a meeting between Shilpa's representatives and Novartis to discuss the '816 patent and other matters at an upcoming professional meeting in New York City, and that he attended the meeting on March 16, 2016. *See* Exh. 2 at page 27, ¶¶ 77-78.

In the Delaware underlying action, Novartis moved to disqualify Mr. Iyer as Plaintiff's

---

[2] Novartis's Amended Answer and Counterclaims are attached as Exhibit 2.

[3] The '816 patent issued February 23, 2016 from Application Ser. No. 13/635,207 (the '207 application) filed at the Patent Office.

counsel under the lawyer-witness rule.  In response to the motion, Shilpa submitted a declaration of Mr. Iyer, adding as exhibits the emails he sent to Mr. Waibel in connection with the meeting in New York.  Novartis repeatedly told the court that Mr. Iyer was a witness to the early 2016 meeting with Novartis, and that his testimony regarding that meeting and the associated correspondence was relevant to its defense of willful infringement.[4]  Shilpa informed the Delaware court that Mr. Iyer would not serve as courtroom advocate, and that his personal knowledge was neither a basis for his disqualification nor relevant to Shilpa's allegations of willful and induced infringement. The Special Master found no prejudice to Novartis in allowing Mr. Iyer to continue his representation of Shilpa in his present capacity and denied Novartis's motion to disqualify Mr. Iyer.[5]

On October 11, 2022, Novartis issued a subpoena to Mr. Iyer, seeking both his deposition (unlimited by any topics), and a broad-based request for documents that delves into the details of Mr. Iyer's representation of Shilpa.[6]  On October 17, 2022, Shilpa objected to the unbounded scope of the subpoena, and requested that Mr. Iyer's deposition be limited to his early 2016 interactions with Novartis regarding the issuance of the '816 patent, as it pertains to Novartis's defense of

---

[4] Letter of April 22, 2022, from Novartis to Magistrate Judge Fallon, attached as Exhibit 3; Letter of November 29, 2021, from Novartis to Magistrate Judge Fallon at pp. 2-3, attached as Exhibit 4.

[5] *Shilpa Pharma, Inc. et al., v. Novartis Pharm's Corp.,* 1:21-cv-00558-MN, D.I. 98 (Special Master's Report and Recommendation) and D.I. 101 (Order adopting the Report and Recommendation).

[6] *See* Exhibit 1.

willful infringement.[7]  Novartis responded on October 24, 2022, refusing to limit the scope of Mr. Iyer's deposition in any way.[8]  On October 25, Mr. Iyer provided specific objections to the document requests,[9] but Novartis has refused to narrow the scope of Mr. Iyer's deposition or the documents it has sought, necessitating the instant motion.

**III. Legal Standards**

Although parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense, courts have discretion to limit the scope of discovery when it is cumulative or can be obtained from other more convenient, less burdensome, or less expensive sources.  Fed. R. Civ. P. 26(b)(l)-(2).  The Court may also limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the discovery."  Fed. R. Civ. P. 26(c)(1).

Depositions of opposing counsel are presumptively disallowed.  See HANDBOOK FED. CIV. DISC. & DISCLOSURE § 1:78 (4th ed. July 2018 update) ("Litigation counsel are presumptively entitled to a protective order against being deposed by an adversary."); *Coleman v. D.C.*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("Courts [] presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise."); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C.

---

[7] Letter from Mr. Saliba of Sughrue to Mr. Trenchard of Gibson Dunn dated Oct. 17, 2022 attached as Exhibit 5.

[8] Email from E. Whitcher of October 24, 2022, attached as Exhibit 6.

[9] Letter from Mr. Saliba of Sughrue of October 25, 2022, attached as Exhibit 7.

2009) ("when seeking to depose opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak C*o., 276 F.R.D. 376, 380 (D.D.C. 2011).

To overcome the presumption against deposing opposing counsel, the party seeking such a deposition must show "that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[10] *Guantanamera*, 263 F.R.D. at 8 (citations and quotation marks omitted). In most circumstances, the mere request to depose an opposing party's attorney constitutes the good cause required to obtain a Rule 26(c) protective order. *See, e.g., S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26 [] protective order") (internal citations omitted).

**IV. Argument**

Under the foregoing legal standards, Novartis's subpoena for Mr. Iyer's deposition

---

[10] These factors were first articulated by the Eighth Circuit Court of Appeals in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). While the Court of Appeals for the D.C. Circuit has not expressly adopted the *Shelton* test, a number of D.C. Courts have applied this test to bar requests to depose opposing counsel. *See, e.g., United States v. All Assets Held in Account Number 80020796,* 13-cv-1832 (JDB), 2019 U.S. Dist. LEXIS 805, 2019 WL 95605 at *4 (D.D.C. Jan. 3, 2019); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.,* 263 F.R.D. 1, 9 (D.D.C. 2009); *Coleman v. District of Columbia,* 284 F.R.D. 16, 18 (D.D.C. 2012) ("When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so."); *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-cv-1810, 1999 U.S. Dist. LEXIS 1072, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

6

testimony should be precluded because it is neither appropriate nor necessary.[11]  Mr. Iyer is litigation counsel to Shilpa and he is presumptively entitled to a protective order against being deposed by his client's adversary, Novartis.  *See Coleman*, 284 F.R.D. at 18; *Guantanamera*, 263 F.R.D. at 8; and *Sterne Kessler*, 276 F.R.D. at 380.  As recognized by courts, a deposition such as that requested by Novartis undermines attorney-client communications, presents unique opportunities for harassment, disrupts opposing counsel's preparation, may lead to opposing counsel's disqualification, and may spawn collateral litigation on issues of privilege, scope, and relevancy.  *Coleman*, 284 F.R.D. at 18.[12]

### A. Other Means Exist to Obtain the Nonprivileged Information Sought

Here, the only allegations in Novartis's counterclaim pertaining to Mr. Iyer are that he helped to arrange and attended a March 16, 2016 meeting in New York between Shilpa's representatives and Novartis's in-house counsel, Mr. Peter Waibel, about the issuance of the '816 patent and its potential relevance to Novartis's commercial Gilenya® product.  Ex. 2 at pages 27-28, ¶¶ 77-81.  To the extent Novartis seeks discovery about the meeting and related correspondence, Novartis has means to do so other than deposing Mr. Iyer because Novartis's Mr.

---

[11] As noted, Novartis has already filed a motion to disqualify Mr. Iyer – which was denied – and a deposition of Mr. Iyer with no limit on its scope will undoubtedly spawn collateral litigation on issues of privilege, scope, and relevancy.  *Cf. Coleman*, 284 F.R.D. at 18.

[12] The subpoena is additionally improper because it demands compliance by Mr. Iyer (a Washington, D.C. attorney) at the New York Offices of Gibson Dunn & Crutcher LLP in violation of Fed.R.Civ.P. 45(c), which limits the place of the deposition and the production of documents to aa location "within 100 miles of where the person resides."  Fed. .R. Civ. P. 45(c)(1)(A); Fed. R. Civ. P. 45(c)((2)(A).

Waibel also attended the meeting. *Guantanamera Cigar,* 263 F.R.D. at *21-22. ("Plaintiff asserts that 'Ms. Debra Evenson has specific information (which only she retains) regarding her specific contacts, places, times, etc. with Flora Gonzales' (citation omitted). *It is entirely clear that information regarding meetings and a relationship between two people are in fact known to both people. Thus, plaintiff may depose Flora Gonzales about the alleged relationship between her and Ms. Evenson.*") (emphasis added). Novartis can obtain information about the meeting from its own Mr. Waibel, and it may also depose the representatives of Shilpa who attended. Because these other sources of information are more accessible and less intrusive to Shilpa's representation, Novartis cannot overcome the presumption against deposing Mr. Iyer.

Novartis also contends that it is entitled to assess the veracity of Shilpa's counsel's statement that Mr. Iyer did not represent Shilpa in the prosecution of the '207 patent application. Again, Novartis has other means to obtain and test the veracity of this information, to the extent it is even entitled to do so. *First*, the U.S. Patent and Trademark Office's files or "prosecution" histories of U.S. patent applications are public records. All business with the U.S. Patent Office is to be conducted in writing. 37 C.F.R. § 1.2. A plain review of the Patent Office's records confirms that neither Mr. Iyer nor his law firm were involved in prosecuting the '816 patent. As the public record shows, the '816 patent was prosecuted by Mr. Ming Chow, an attorney who has no association with Mr. Iyer or his firm, and later on, by Shilpa itself. *Second*, Shilpa has already stated in an interrogatory response that Mr. Iyer did not begin representation of Shilpa regarding fingolimod hydrochloride until February, 2016, when the '816 patent issued. Both the public records at the Patent Office and Shilpa's interrogatory response establish the baselessness of

Novartis's claim that it needs to *verify* that Mr. Iyer was not involved with the prosecution of the '207 application. Desperate to accuse someone – *anyone* – of fraud or inequitable conduct in this matter, Novartis seeks an unbounded deposition of Mr. Iyer on the entirety of his representation of Shilpa – without factual basis – in an attempt to resurrect its thoroughly defeated motion to disqualify Mr. Iyer as counsel.

Because Novartis can obtain information about: (1) the March 2016 meeting in New York and (2) those who actually prosecuted Shilpa's '207 application (other than by deposing Mr. Iyer), Novartis should not be permitted to depose him.[13] Therefore, Novartis's subpoena for Mr. Iyer's testimony should be quashed entirely, or limited to his early 2016 interactions with Novartis regarding the issuance of the '816 patent-in-suit and its potential relevance to Novartis's business.

**B. The Information Sought is Not Relevant and is Privileged**

Novartis urges that its deposition of Mr. Iyer is relevant to its inequitable conduct allegations in this case. See Exh. 7. That is wrong for two reasons.

*First*, Novartis's inequitable conduct allegations in this case are directed to Shilpa and one or more of its employees. They are not directed to Mr. Iyer or his law firm (Sughrue Mion, PLLC), neither of whom were involved with the prosecution to the '207 application that led to the 816 patent in suit. Ex. 2 at pages 17-26, ¶¶ 34-74. A subpoena directed to Mr. Iyer as opposing litigation counsel on the subject of inequitable conduct that is entirely untethered to the allegations

---

[13] Novartis has issued a deposition subpoena to Mr. Ming Chow, who prosecuted the '207 application from 2012-2016.

of the counterclaims is not relevant or proper.

*Second*, and relatedly, Novartis's inequitable conduct defense in its third counterclaim is, by definition, related to conduct that occurred *before* the '816 patent issued *during prosecution before the U.S. Patent Office*. The conduct described in paragraphs 77-81 of Novartis's third counterclaim is all directed to *post-issuance* conduct which is not related to inequitable conduct. Post-issuance conduct does not affect the original grant of Shilpa's property right. In *Aptix Corp. v. Quickturn Design Systems*, *Inc*., 269 F.3d 1369, 1374 (Fed. Cir. 2001), "Aptix and [its licensee] Meta challenge[d] the [district court's] determination that misconduct during the enforcement of a patent can render the patent unenforceable." The Federal Circuit held that in order to render a patent unenforceable, the inequitable conduct must have occurred in patent prosecution before the Patent Office, stating that "[l]itigation misconduct, while serving as a basis to dismiss the wrongful litigant, does not infect, or even affect, the original grant of the property right." *Id.* at 1375. The *Aptix* holding has been applied in the District Courts. *See, e.g., Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prod., LLC*, 2011 WL 679337, at *6 (E.D. Wis. Feb. 16, 2011) ("[A]lleged litigation misconduct is not sufficient to support a counterclaim of unenforceablity of a patent."). Similarly, here, any alleged *post-grant* activity relating to Mr. Iyer's corresponding with and meeting with Novartis is not "sufficient to support [Novartis's] counterclaim of unenforceability." *Id*. Under these circumstances, Novartis cannot overcome the presumption against deposing Shilpa's trial counsel Mr. Iyer or show any basis for invoking the crime-fraud exception to the attorney client privilege.

### C. The Information Sought is Not Crucial to the Preparation of Novartis's Case

Where Novartis has failed to provide any list of deposition topics for Mr. Iyer at all, it cannot establish that his testimony is crucial to the preparation of its case. To the contrary, an open-ended deposition of opposing counsel, demanded on the basis of general musings about inequitable conduct, is little more than a fishing expedition in search of a narrative that is not legally recognized. *Aptix Corp.,* 269 F.3d at 1375. The court in Delaware has stayed all discovery on the issues of sham litigation, antitrust, and *Walker Process* fraud. Novatris is wrong in alleging that post-grant conduct supports its claim of inequitable conduct. *See e.g., Aptix Corp.,* 269 F.3d at 1375 ("The doctrine of unclean hands does not reach out to extinguish a property right based on misconduct during litigation to enforce the right. Indeed neither the Supreme Court nor this court has ever declared a patent unenforceable due to litigation misbehavior."). Thus, a deposition on topics of post-grant misconduct – to the extent related to inequitable conduct – is improper.

### D. Novartis's Document Requests

Turning to Novartis's subpoena for documents from Mr. Iyer, the requests are outrageous and Mr. Iyer should be protected against having to respond to them. Novartis requests:

*1. All communications between you and Shilpa relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*2. All documents you exchanged with Shilpa relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*3. All notes reflecting the contents of communications with Shilpa relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*4. All communications with third parties, including at least Ming Chow, relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*5. All documents you exchanged with third parties, including at least Ming Chow, relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*6. All notes reflecting the contents of communications with third parties, including at least Ming Chow, relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*7. Documents sufficient to show when you first you first communicated with Shilpa about the 207 Application and/or 816 Patent.*

*8. Documents sufficient to show any fee arrangements between you and Shilpa relating to the prosecution of the 207 Application and/or enforcement of the 816 Patent.*

*9. All invoices submitted by you to Shilpa reflecting work relating to the 207 Application and/or 816 Patent.*

Requests Nos. 1-3 and 7 seek documents exchanged with or reflecting communications with Shilpa, and attorney notes or memoranda memorializing the same. There can be no serious debate that these documents are protected by the attorney-client privilege or the attorney work product doctrine. Requests Nos. 4-6 seek documents relating to communications with third parties regarding the prosecution of the '207 application or the enforcement of the '816 patent. As stated, Mr. Iyer did not prosecute the '207 application, so no responsive documents exist. To the extent any communications exist that relate to the enforcement of the '816 patent, they are protected by the attorney work product doctrine.

Request numbers 8 and 9 seek fee arrangements and invoices submitted to Shilpa. Billing records of attorneys are subject to the attorney-client privilege because they reveal the nature of the services rendered. *See, e.g., Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 523 (E.D. Pa. 1996) (holding billing records subject to attorney-client privilege to extent records reveal nature of services performed); *United States v. Keystone Sanitation Co.*, 885 F. Supp. 672, 675 (M.D. Pa. 1994); *Leach v. Quality Health Services*, 162 F.R.D. 499, 501-02 (E.D. Pa. 1995)(attorney bills are privileged "to the extent that they reveal litigation strategy and/or the nature of services performed."). Fee arrangements are also privileged to the extent they reflect legal advice of counsel or disclose legal strategies between counsel and client. In any event, there are no fee arrangements between Mr. Iyer and Shilpa and no invoices from Mr. Iyer to Shilpa.

For the same reasons Novartis's subpoena for Mr. Iyer's testimony should be quashed or limited, Novartis's subpoena for documents from Mr. Iyer should be quashed. Mr. Iyer is litigation counsel to Shilpa and he is presumptively entitled to a protective order against discovery from an adversary such as Novartis. *See Coleman*, 284 F.R.D. at 18; *Guantanamera*, 263 F.R.D. at 8; and *Sterne Kessler*, 276 F.R.D. at 380.

**V.       Shilpa is Entitled to its Reasonable Expenses, Including Attorney's Fees**

Fed. R. Civ. P. 26(c)(3) provides that motions seeking a protective order from discovery include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Plaintiff certifies that it

13

advised Novartis of the impropriety of the subpoena to Mr. Iyer in a letter of October 17, 2022,[14] for largely the same reasons set forth in this motion, and asked that the subpoena be withdrawn. Novartis responded in an October 24, 2022 email, refusing to withdraw the subpoena and attempting to relate the subject matter to the inequitable conduct claims directed against Shilpa and individual employees. Novartis's refusal necessitated the instant motion.

Fed. R. Civ. P. 26(c)(3) states that "Rule 37(a)(5) applies to the award of expenses" for motions for a Protective Order. Rule 37(a)(5)(A) provides that if the motion is granted, the court "must" order payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless one of the three specified exceptions applies. See Fed R. Civ. P. 37(a)(5)(A)(i)-(iii). Here, no exception applies. First, movant did confer in good faith to attempt to resolve this dispute. Rule 37(a)(5)(A)(i). Novartis's service of this deposition subpoena was plainly not "substantially justified" under the case law. Rule 37(a)(5)(A)(ii). Shilpa's October 17 letter specifically notified Novartis that there was no legal basis for this deposition, and requested its withdrawal. Given the overwhelming authority prohibiting fishing expeditions of opposing counsel, Novartis either simply failed to consider the legal issues, despite notice, or proceeded with full knowledge that the subpoena was improper.

Plain and simple, this subpoena is abusive, harassive, and without purpose other than to disrupt the litigation process and to drive up litigation costs. As such, the circumstances make an award of expenses just. Rule 37(a)(5)(A)(iii).

---

[14] Attached as Exhibit 5.

*VI. Conclusion*

      For the foregoing reasons, it is respectfully requested that this Court quash the deposition subpoena of Mr. Chid Iyer and issue a protective order precluding Novartis from seeking further discovery from him.

| | |
|---|---|
| Date: November 3, 2022 | Respectfully submitted |
| | */s/ Raja Saliba* |
| | _____ |
| | SUGHRUE MION, PLLC |
| | Raja Saliba (DC Bar #465832) |
| | |
| | Fadi N. Kiblawi |
| | 2000 Pennsylvania Ave., NW |
| | Washington, DC 20037 |
| | (202) 293-7060 |
| | rsaliba@sughrue.com |
| | fkiblawi@sughrue.com |
| | |
| | *Counsel for Chidambaram S. Iyer, Esq.* |