# EXHIBIT 3



**Daniel M. Silver**
Wilmington Office Managing Partner

T. 302-984-6331
F. 302-691-1260

dsilver@mccarter.com

McCarter & English, LLP

Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717

www.mccarter.com

April 22, 2022

**VIA CM/ECF AND FEDEX**
The Honorable Sue L. Robinson
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801

Re:   *Shilpa Pharma, Inc. v. Novartis Pharmaceutical Corp.*, C.A. No. 21-558-MN (D.Del.)

Dear Judge Robinson:

We write for Novartis in response to Shilpa's April 20, 2022 letter (D.I. 93) about Your Honor's email of April 14, 2022 on Novartis's Disqualification Motion.

Mr. Iyer's testimony is central to the question of willful infringement in this case. Shilpa's effort to evade or backtrack from multiple admissions of that fact is telling. But there is no erasing the record, and Shilpa alone does not control if Mr. Iyer is a necessary witness.

Deliberate intent and notice of the patent are different things. Someone can know about a patent but mistakenly believe in good faith they do not infringe. In that case, there would be infringement, but it would not be deliberate. That is why, for willfulness, "proof that the defendant knew about the asserted patent" is a separate element from whether defendant knew "its conduct amounted to infringement." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2001). A similar analysis applies to induced infringement; "the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 2021-1609, 2021-1633, -- F.4th --, 2022 WL 1052320, at *6 (Fed. Cir. Apr. 8, 2022) (Slip. Op.).

Mr. Iyer's testimony is relevant to exactly this issue of subjective intent. Shilpa itself has said so, repeatedly:

- Shilpa's Complaint avers that, in 2016, Shilpa told Novartis that Gilenya was "covered by one or more" of the patent's claims. (D.I. 1 ¶ 28 *see also id*.¶ 49.) Based on that allegation, the Complaint says that Novartis "knows or should know" that Gilenya infringes "the '816 patent" and lacks "a good faith belief that the '816 patent is invalid or not infringed." (*Id*. ¶ 50; *see also* ¶¶ 36-37; 47-48.)

- Novartis served interrogatories asking Shilpa to elaborate on the "basis" for "the contention that" Novartis's "alleged infringement" was "'willful'" and that Novartis had "the required mental state to be liable for indirect infringement." (D.I. 43-1 at 15.) Shilpa responded that Mr. Iyer allegedly told Mr. Waibel ((Novartis's in-house counsel) about the patent and "its applicability to Novartis' Gilenya® product" in a one-on-one phone call in February 2016. Including that call, Shilpa "and its counsel"

ME1 40322767v.1

- allegedly "corresponded with Novartis' representative on several occasions" about "the applicability of the '816 patent to" Gilenya. Shilpa alleges Mr. Waibel said Novartis would "consider the applicability of the '816 patent to the Gilenya® product," but "never provided a basis for … a good faith belief" that Gilenya "was not covered" by the patent. (D.I. 43-1 at 11, 15-16.)

- Mr. Iyer declares in this motion that he told Novartis Shilpa believed Gilenya infringed. He attests that in late February or early March, he "had a telephone discussion with Mr. Waibel" in which he identified the patent and conveyed "Shilpa's belief in its applicability to Novartis's' [sic] product" Gilenya. (D.I. 54 ¶ 6.) Then, at a March 17, 2016 meeting, Mr. Iyer says he "asked Mr. Waibel whether he or Novartis had yet considered the '816 patent and its applicability to Gilenya®." Allegedly, Mr. Iyer "was told he had not but that he would look into it and respond in due course." (*Id*. ¶ 10.) Thereafter, in mid-April, Mr. Iyer says he "had a subsequent phone call with Mr. Waibel during which I again asked about the status of Novartis' review of the '816 patent. Mr. Waibel stated that if Novartis was interested in discussing further he would let me know." (*Id*. ¶ 12.)

Mr. Iyer thus has evidence of what he said to Mr. Waibel, what Mr. Waibel said to him, and what was not said in those conversations, too. Shilpa pointed to that very evidence—and nothing more—in response to Novartis's interrogatory on the "basis" of willful direct and intentional indirect infringement. Shilpa's proclamation in its letter (at 1)—in bold underlined typeface, no less—that "the 2016 correspondence and in person meeting **do not** form the basis for the willfulness allegations" is flatly contrary to the record. Shilpa said exactly the opposite in the interrogatory responses—on which Mr. Iyer himself appears as counsel. (D.I. 43-1 at 22.)

Shilpa's letter nowhere even acknowledges the evidence quoted in the bullet points above. Shilpa instead alludes (at 3) to an article (the Wang paper) as somehow relevant, but nowhere points to evidence that Wang connected Gilenya to the '816 patent, or even that Novartis knew about the article before this case. Shilpa also tries to shift ground (at 2) to argue that that "conduct" can show willfulness. That makes no sense here. Novartis's decision to continue manufacturing Gilenya after knowing about the '816 patent says nothing about willful infringement. That is why Shilpa has repeatedly claimed it *told* Novartis that Gilenya infringes—to support the allegation that Novartis proceeded willfully despite that warning.

Novartis disputes that allegation, and the resolution of that dispute will be an important part of this case. Other than Mr. Iyer's statements, the evidence so far shows that Mr. Iyer did not tell Novartis that Gilenya infringed. Shilpa's patent claims a "polymorph" of fingolimod, Gilenya's active ingredient. But the patent specification cites prior art from Novartis scientists disclosing the polymorph form in Gilenya, the "Mutz" publication. Shilpa has yet to explain how something admittedly disclosed in the prior art—and cited in the patent itself—can possibly infringe what was putatively a different invention.

Rather than accuse Novartis of infringement, Mr. Iyer suggested in 2016 that generic drug makers might use the claimed polymorph, and Novartis should license the patent to prevent that.

Multiple established facts point in that direction. (*See generally* D.I. 58 at 3-4.) Shilpa complains that the record is not complete on this point until Mr. Waibel testifies. Maybe, but also irrelevant here. Rule 3.7 disqualifies a lawyer-witness "likely" to be necessary, a standard Mr. Iyer's testimony meets with ease.

Accordingly, it is indisputable that Mr. Iyer's memory and veracity will be a live issue in this case. There is no contemporaneous written record of his discussions with Mr. Waibel in 2016. His testimony is the only source for Shilpa's allegations. Novartis accordingly will depose him, and possibly call him at trial. Potentially hundreds of millions of dollars will depend, in part, on his evidence. He simply cannot serve as counsel in a case where his testimony as witness is so central.

We are available to discuss these matters further at Your Honor's convenience.

Respectfully submitted,

*/s/ Daniel M. Silver*

Daniel M. Silver (#4758)

cc: Counsel of Record (via CM/ECF and Electronic Mail)