# EXHIBIT 4



| | Daniel M. Silver | McCarter & English, LLP |
| --- | --- | --- |
| | Partner | Renaissance Centre |
| | T. 302-984-6331 | 405 N. King Street, 8th Floor |
| | F. 302-691-1260 | Wilmington, DE 19801-3717 |
| | dsilver@mccarter.com | www.mccarter.com |

November 29, 2021

**VIA CM/ECF**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Unit 14
Room 6100
Wilmington, DE 19801-3555

Re:     ***Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corporation,***
        **C.A. No. 1:21-cv-00558-MN (D. Del.)**

Dear Magistrate Judge Fallon:

We represent defendant Novartis in this patent case.  Novartis seeks a protective order that precludes Mr. Chidambaram S. Iyer from having access to Novartis's confidential discovery materials.  This protective order is essential, at least on an interim basis, pending resolution of Novartis's motion to disqualify Mr. Iyer, one of the lawyers for plaintiff Shilpa.  A copy of that motion is attached as Exhibit A, and is docketed at D.I. 42.  Allowing Mr. Iyer access to Novartis's confidential information will substantially undermine any decision disqualifying Mr. Iyer from this action for reasons explained below.

**Introduction and Facts**

Novartis and Shilpa agree on all aspects of the disputed protective order except for provisions related to disqualification. (*See* Ex. B (draft protective order with disputed provisions)).

While the parties were negotiating the order, Shilpa served interrogatory responses that identified Mr. Iyer as a witness to important underlying events.  The lawyer-witness rule generally prohibits a witness like Mr. Iyer from serving as counsel.  *See* ABA Model R. Prof. Conduct 3.7(a).  Novartis thus promptly raised the lawyer-witness problem with Mr. Iyer and Shilpa.  (*See* Ex. A at 6–7 (summarizing back-and-forth on lawyer-witness issue)).

Pending resolution of that issue, Novartis proposed also that Mr. Iyer be barred from receiving Novartis's confidential information. (*See* Ex. C at 1–3; Ex. D at 3 (e-mail exchanges between Shilpa's counsel and Novartis's counsel)).  That will allow discovery to proceed while the Court considers Novartis's motion.  Otherwise, Novartis would need to withhold from production any protected information, for fear that Mr. Iyer's access as counsel could pollute his memory and testimony as a witness.  The prevention of that harm is one of the very bases of Novartis's disqualification motion.  (*See* Ex. A at 1, 10–11.)

In response, Shilpa denied that Mr. Iyer is a witness; threatened to seek disqualification of all of Novartis's outside global counsel and Delaware counsel if the issue were brought to the Court; and refused to temporarily sideline Mr. Iyer pending resolution of the dispute.  (*Id*. at 6–7.)

At the eleventh hour, Shilpa even added proposed language to the protective order that would preclude Novartis's outside counsel team from receiving confidential or highly confidential information under the protective order, in an obvious—and completely incongruent—act of retaliation. (*Id.* at 6; Ex. C at 1–3; Ex. D at 3).

Novartis respectfully submits that good cause exists under Fed. R. Civ. Pro. 26(c)(1) for a protective order that precludes Mr. Iyer from receiving any protected information under the order pending Novartis's disqualification motion. This resolution will allow discovery to proceed while preserving the Court's ability to grant Novartis meaningful relief in disqualifying Mr. Iyer.

### Mr. Iyer Should Receive No Protected Information Pending Disqualification

Federal Rules of Civil Procedure 26(c)(1)(D), (E), and (G) provide that the Court may "for good cause, issue an order to protect a party or person" from "oppression" by "limiting the scope of disclosure or discovery to certain matters"; "designating the persons who may be present while the discovery is conducted"; and requiring that confidential information "not be revealed or be revealed only in a specified way[.]" *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (1994) ("In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.")

"Good cause" exists "on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* "'[T]he court . . . must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.'" *Id.* at 787 (quoting Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 432–33 (1991).) "'The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information.'" *Id.* (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043, at 305 (1970).)

Where, as here, these rules are applied to counsel, relief depends on "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party[.]" *U.S. Steel Corp. v. U.S.*, 730 F. 2d 1465, 1468 (Fed. Cir. 1984); *see also In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (decision to preclude lawyer access to discovery material "must be determined. . .by the facts on a counsel-by-counsel basis'") (quoting *U.S. Steel*, 730 F. 2d at 1468)). In particular, while "[a]n attorney's representation [] generally comes with a right of access to all of the materials in the case, including confidential materials produced by the other side in discovery[,]" that right "must give way under various circumstances, such as when there is an unacceptably high risk of harm to a party from giving a particular individual access to that party's confidential materials." *British Telecommunications PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 390 (D. Del. 2019).

For that reason, outside counsel may be shielded from access to confidential information under a protective order. An example is in *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583 (S.D. Fla 2006). There the Court precluded outside counsel from receiving

confidential documents under a protective order. As here, outside counsel were potential witnesses, and the Court found that "access to the defendant's information that could consciously or unconsciously affect their testimony regarding the patent-in-suit[.]" *Id.* at 587.

That is the harm Novartis seeks to avoid here, at least until Novartis's disqualification motion is decided. As detailed in that motion (Ex. A at 5–6), Shilpa interrogatory responses say that Mr. Iyer witnessed discussions with Novartis in 2016 about the patent in this case. Those discussions allegedly show willful and intentional direct and indirect patent infringement. Tens or hundreds of millions of dollars in potential liability ride on that theory. (*Id.* at 17.) But under ABA Model Rule 3.7(a), a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[,]" except in circumstances not present here. Mr. Iyer has refused to withdraw, so Novartis was forced to move to disqualify.

As also detailed in the motion (Ex. A at 6–7, 9–10, 18), one of the harms Novartis seeks to prevent is the irreparable taint to the record that could follow from Mr. Iyer's access to Novartis confidential information before trial. That information could influence, even innocently, Mr. Iyer's memory and testimony about the 2016 discussions. For instance, Shilpa says Mr. Iyer put Novartis on notice of Shilpa's view that Novartis's product infringes Shilpa's patent. (*Id.* at 3.) Access to any information related to infringement accordingly could influence Mr. Iyer's testimony about the 2016 discussions. As the Federal Circuit has observed, "'[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.'" *Deutsche Bank*, 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).).

In this case, the argument for precluding Mr. Iyer is even stronger than usual. Novartis merely seeks protection pending resolution of disqualification. If the motion is denied, then Mr. Iyer would return to being treated as any other outside counsel. Only if he is disqualified would he be permanently barred from access. This is the only way that discovery can proceed while preserving the Court's ability to grant meaningful relief if the disqualification motion is granted.

Respectfully submitted,

/s/ Daniel M. Silver (#4758)

cc: Counsel of Record (via electronic mail)

ME1 38365162v.1

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHILPA PHARMA, INC.,<br>        Plaintiff,<br><br>    v.<br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION,<br>                Defendant. | C.A. No. 21-558-MN<br><br>JURY TRIAL DEMANDED |

**NOVARTIS'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY
CHIDAMBARAM S. IYER AS PLAINTIFF'S COUNSEL UNDER
THE LAWYER-WITNESS RULE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

FACTS ...................................................................................................................................2

    Shilpa's Complaint.......................................................................................................... 2

    Shilpa's Interrogatory Responses ................................................................................... 4

    Subsequent Developments .............................................................................................. 6

ARGUMENT ..........................................................................................................................7

    I.      The Court Should Disqualify Mr. Iyer............................................................. 9

          A.      Mr. Iyer Is a "Necessary" Witness............................................................ 11

          B.      No Exception to Rule 3.7 Applies ............................................................ 14

          C.      Mr. Iyer's Disqualification Should Be Total ............................................ 16

    II.    Alternatively, Mr. Iyer Should Be Barred from Most Pretrial
          Activities, and Trial ........................................................................................ 18

CONCLUSION......................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abrishamian v. Washington Med. Grp., P.C.,
216 Md. App. 386 (Md. 2014) ...............................................................................17

Amgen Inc. v. Shilpa Medicare Ltd.,
No. 3:18CV11157 (D.N.J. June 27, 2018) ............................................................16

Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC,
236 F.R.D. 583 (S.D. Fla 2006) ......................................................................10, 18

ASI, Inc. v. Aquawood, LLC,
No. 19-CV-0763 (JRT/HB), 2021 WL 2374864 (D. Minn. June 10, 2021)...........19

Biogen MA Inc. v. Shilpa Medicare Limited,
No. 1:17CV00847 (D. Del. June 28, 2017) ...........................................................16

Commil USA, LLC v. Cisco Sys., Inc.,
135 S. Ct. 1920 (2015).........................................................................................13

Corona v. Hotel & Allied Servs. Union Loc. 758,
No. 04-CV-10074 (CSH), 2005 WL 2086326 (S.D.N.Y. Aug. 30, 2005) ........15, 17

In re Corp. Res. Servs., Inc.,
576 B.R. 779 (Bankr. S.D.N.Y. 2017), rev'd and remanded,
595 B.R. 434 (S.D.N.Y. 2019)..............................................................................17

Dunlap v. State Farm Fire & Cas. Co.,
955 A.2d 132 (Del. Super. Ct. 2007) ..............................................................14, 17

E.E.O.C. v. Bardon, Inc.,
2010 WL 323067 (D. Md. Jan. 19, 2010) .............................................................17

Eisai R&D Management Co., Ltd. et al. v. Shilpa Medicare Limited,
No. 3:20CV06729 (D.N.J. June 1, 2020)...............................................................16

Emerald Partners v. Berlin,
564 A.2d 670 (Del. Ch. 1989) ..............................................................................17

Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.,
419 F. Supp. 2d 23 (D. Mass. 2006) ...............................................................12, 16, 17

Matter of Est. of Waters,
647 A.2d 1091 (Del. 1994) ......................................................................8, 10, 11, 12

# TABLE OF AUTHORITIES
(continued)

*Finn v. Harbor Metal Treating Inc.*,
 No. 3:09-CV-130CAN, 2009 WL 3642753 (N.D. Ind. Oct. 29, 2009) ............................15, 17

*Freeman v. Vicchiarelli*,
 827 F. Supp. 300 (D.N.J. 1993) .......................................................................................13, 17

*Fuller v. Collins*,
 114 A.D.3d 827 (2d Dep't 2014) ............................................................................................15

*Genentech, Inc., et al. v. Apotex Inc., et al.*,
 No. 1:19CV00078 (D. Del. Jan. 14, 2019) .............................................................................16

*Genentech, Inc. et al. v. Shilpa Medicare Limited*,
 No. 1:20CV00624 (D. Del. May 8, 2020) ...............................................................................16

*General Mill Supply Co. v. SCA Services, Inc.*,
 697 F.2d 704 (6th Cir. 1982) ............................................................................................14, 15

*Gilead Sciences, Inc. v. Apotex, Inc. et al.*,
 No. 1:20CV00189 (D. Del. Feb. 7, 2020)................................................................................16

*iHealthcare, Inc. v. Greene*,
 No. 2:11 CV 396, 2012 WL 2026361 (N.D. Ind. June 5, 2012)..............................................17

*Jensen v. Poindexter*,
 352 P.3d 1201 (Okla. 2015) ....................................................................................................17

*Jones v. City of Chicago*,
 610 F. Supp. 350 (N.D. Ill. 1984) ................................................................................10, 15, 17

*Klupt v. Krongard*,
 126 Md. App. 179 (Md. 1999) .....................................................................................8, 14, 17

*Lowe v. Experian*,
 328 F. Supp. 2d 1122 (D. Kan. 2004) .....................................................................................19

*MacArthur v. Bank of N.Y.*,
 524 F. Supp. 1205 (S.D.N.Y. 1981).........................................................................................13

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
 872 F. Supp. 1346 (E.D. Pa. 1994), *aff'd*,
 107 F.3d 1026 (3d Cir. 1997)...................................................................................................16

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,
 239 F. Supp. 2d 1170 (D. Colo. 2003) ....................................................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Northbrook Digital, LLC v. Vendio Servs., Inc.*,
    625 F. Supp. 2d 728 (D. Minn. 2008) ..................................................................................19

*Noval Williams Films LLC v. Branca*,
    128 F. Supp. 3d 781 (S.D.N.Y. 2015) ................................................................................17

*Novartis Pharmaceuticals Corporation et al. v. Shilpa Medicare Limited*,
    No. 1:15CV01111 (D. Del. Nov. 30, 2014) .......................................................................16

*OSI Pharmaceuticals, LLC et al. v. Shilpa Medicare Limited*,
    No. 1:18CV01096 (D. Del. July 25, 2018) ........................................................................16

*Pharmacyclics LLC et al. v. Shilpa Medicare Limited et al*,
    No. 1:18CV00237 (D. Del. Feb. 9, 2018) ..........................................................................16

*Premium Prods., Inc. v. Pro Performance Sports, LLC*,
    997 F. Supp. 2d 433 (E.D. Va. 2014) ...............................................................................13

*Princeton Digital Image Corp. v. Off. Depot Inc.*,
    No. CV 13-239-LPS, 2017 WL 3573812 (D. Del. Aug. 17, 2017) .....................................7

*Rumpza v. Donalar Enterprises, Inc.*,
    581 N.W.2d 517 (S.D. 1998) .............................................................................................17

*Sanofi-Aventis U.S. LLC et al. v. Shilpa Medicare Limited*,
    No. 1:19CV01975 (D. Del. Oct. 17, 2019) .......................................................................16

*SenoRx, Inc. v. Hologic, Inc.*,
    920 F. Supp. 2d 565 (D. Del. 2013) ....................................................................................9

*Sherwood Grp., Inc. v. Rittereiser*,
    No. CIV. 90-2414 (CSF), 1991 WL 87578 (D.N.J. May 20, 1991) ...................................17

*Shipley v. Schlecker*,
    No. CIV.A. 2002-01-422, 2002 WL 32072579 (Del. Com. Pl. Dec. 2, 2002) ...................17

*Stewart v. Bank of America, N.A.*,
    203 F.R.D. 585 (D. Ga. 2001) .......................................................................................9, 17

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
    141 F. Supp. 2d 616 (W.D.N.C. 2001) .............................................................................14

*Thomas Steel Corp. v. Ameri-Forge Corp.*,
    No. 91 C 2356, 1991 WL 280086 (N.D. Ill. Dec. 27, 1991) .............................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Turner v. AIG Domestic Claims, Inc.*,
  No. 4:10CV3159, 2011 WL 2632893 (D. Neb. July 5, 2011), *rev'd*,
  823 F. Supp. 2d 899 (D. Neb. 2011) ................................................................11, 17

*U.S. v. Merlino*,
  349 F.3d 144 (2003) ................................................................................................17

*U.S. v. Miller*,
  624 F.2d 1198 (3d Cir. 1980) ...................................................................................7

*VanNostrand v. New York Cent. Mut. Fire Ins. Co.*,
  127 A.D.3d 851 (2d Dep't 2015) ............................................................................14

*VLSI Tech. LLC v. Intel Corp.*,
  No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) ...............................12

*Weigel v. Farmers Ins. Co., Inc.*,
  356 Ark. 617 (Ark. 2004) .......................................................................................14

*World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*,
  866 F. Supp. 1297 (D. Colo. 1994) ......................................................................9, 19

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021) ....................................................................12, 13

**Statutes**

35 U.S.C. § 284 ........................................................................................................18

**Rules**

ABA, Annotated Model Rule of Professional Conduct, Rule 3.7 (9th ed. 2019) ................... *passim*

ABA, Annotated Model Rules of Professional Conduct (3d ed. 1996) .........................................8

D. Del. L. R. 83.6(d) .......................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff Shilpa has recently identified one of its own trial counsel as the only Shilpa witness to key events in this case. But "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." ABA Ann. Model R. Prof. Cond. 3.7(a) (9th ed. 2019) ("Model Rule 3.7"). Despite this longstanding rule, counsel refuses to withdraw. Novartis, regrettably, must move to disqualify.

Shilpa has sued Novartis for patent infringement. One of Shilpa's counsel is Mr. Chidambaram S. Iyer of Sughrue Mion, PLLC. He appears on the Complaint and has been admitted *pro hac vice*. In recent interrogatory responses, Shilpa identified Mr. Iyer as the only named Shilpa witness to several 2016 discussions with Novartis about licensing the patent. Mr. Iyer allegedly was the first to tell Novartis about the patent's existence in a one-on-one discussion in February 2016; he then set up and attended a meeting with unnamed Shilpa representatives and Novartis to discuss a license in March 2016; and he then followed up with one or more one-on-one discussions with Novartis in April 2016. Ultimately, Novartis declined the license.

These events are central to Shilpa's case. Shilpa relies on the licensing discussions to claim willful and intentional direct and indirect infringement. Mr. Iyer is thus a "necessary" witness under the lawyer-witness rule. His testimony is "relevant," "material," "not merely cumulative," and "unobtainable elsewhere." (*See* below at 9–14.) He is the only witness Shilpa names, and the only Shilpa witness in two or more key discussions. He is thus the *only* source for Shilpa's side of the story—a story that Novartis vigorously disputes.

Mr. Iyer cannot serve as Shilpa's counsel. If he did, he would have access to discovery materials that could, even innocently, shape his memory and testimony about the 2016 discussions, such as Novartis confidential documents. Mr. Iyer would also be in a position to depose the

Novartis personnel he spoke to in 2016, and possibly to defend depositions of other witnesses that attended the March 2016 meeting with him. And at trial, his involvement as both counsel and witness would confuse the jury.

Novartis must respectfully ask the Court to disqualify Mr. Iyer. Courts have disqualified lawyers in similar circumstances. Shilpa will suffer minimal, if any, prejudice—indeed, Shilpa may benefit in being relieved of a lawyer subject to the conflicting duties of zealous advocate and objective witness. The potential inconvenience to Shilpa pales in comparison to the threat to the integrity of the trial process and fairness to Novartis were Mr. Iyer to remain.

## FACTS

The facts are from docket entries (referred to by D.I. number) and the accompanying November 22, 2021 declaration of Novartis counsel Robert W. Trenchard, and exhibits.

### Shilpa's Complaint

Plaintiff Shilpa Pharma, Inc. is the U.S. operating company of Shilpa Medicare Limited, an Indian company. (D.I. 1 ¶ 2.) Defendant Novartis Pharmaceuticals Corporation sells multiple sclerosis medicine Gilenya®, the subject of this case. (*Id.* ¶¶ 14, 15.)

Shilpa contends that Gilenya infringes U.S. Pat. No. 9,266,816. The 816 Patent claims "polymorphs"—specific crystal forms—of Gilenya's active ingredient "fingolimod," plus methods of making those polymorphs. (*Id.* ¶¶ 11, 13, 14.) Shilpa alleges that the fingolimod in Gilenya is in the form of a polymorph claimed in the 816 Patent. (*Id.* ¶¶ 13, 25, 34, 44.)

The U.S. Patent and Trademark Office granted the 816 Patent to inventors at Shilpa Medicare in India in February 2016. (*Id.* ¶ 9.) Then, according to the Complaint, "[i]n March, 2016, Shilpa Medicare . . . advised Novartis of the issuance of the '816 patent." (*Id.* ¶ 28.) Thereafter, "[r]epresentatives of each company met . . . [and] GILENYA® was discussed. After consideration, Novartis did not further respond to Shilpa's offer of a license." (*Id.*) The Complaint

alleges from this that Novartis was on "notice of the '816 patent, and Shilpa's view that the GILENYA® Products were covered by one or more of its claims, since early 2016." (*Id.*; *see also id.* ¶ 49 ("Defendant was aware of the '816 patent since at least March, 2016, when Shilpa Medicare Limited first notified Defendant of the '816 patent and informed them of Plaintiff's belief that GILENYA® was covered by one or more of its claims.").)  Novartis has disputed these allegations.  (D.I. 13 (Answer) at 2, 4, 6.)

Based in part on this disputed alleged "knowledge of the '816 Patent and knowledge that its acts are encouraging infringement[,]" Shilpa contends that Novartis "is liable . . . under 35 U.S.C. § 271(b)" for induced infringement and "35 U.S.C. § 271(c)" for contributory infringement. (*Id.* ¶¶ 36–37; *see also id.* ¶¶ 47–48.)  In addition, Shilpa alleges that Novartis "knows or should know that the . . . sale in the United States . . . of its GILENYA® Products . . . constitute[s] infringement of the '816 patent without a good faith belief that the '816 patent is invalid or not infringed."  (*Id.* ¶ 50.)  "[D]espite this knowledge, [Novartis] deliberately and intentionally continues to . . . sell . . . infringing GILENYA® Products without authorization from [Shilpa]." (*Id.*)  On that basis, Shilpa alleges "willful infringement" and seeks "monetary damages" including "reasonable royalties."  (*Id.* ¶ 50, Prayer for Relief at 16–17.)  Again, Novartis disputes these allegations.  (D.I. 13 at 5–6.)

Shilpa Medicare assigned the Patent to plaintiff Shilpa Pharma in January 2021, shortly before the Complaint was filed.  (*Id.* ¶ 10.)  Shilpa's counsel Mr. Iyer appears as "Of Counsel" on the Complaint.  (*Id.* at 17.)  He applied for and was granted admission *pro hac vice*.  (D.I. 16.)

### Shilpa's Interrogatory Responses

Novartis served interrogatories seeking more detail about Shilpa's allegations of willfulness, indirect infringement, and damages. Shilpa responded on October 18, 2021. (Ex. A.) As with the Complaint, Mr. Iyer is on the responses' signature page. (*Id.* at 22; *see* D.I. 1 at 17.)

**<u>Interrogatory 3</u>** asked for Shilpa's "factual bases . . . that Novartis was aware of the 816 Patent prior to the filing of the complaint," including "the earliest date" Shilpa contends "Novartis was aware of the" Patent; "identification and description of . . . any communication with Novartis" about the Patent or Gilenya before the Complaint; and "identification of all person involved" in those communications. (Ex. A at 10.)

Shilpa replied that in "February, 2016, Mr. Chid Iyer, outside counsel to Shilpa Pharmaceuticals, contacted Mr. Peter Waibel, Head of Patent Litigation at Novartis Pharmaceuticals Corporation, about the issuance of the '816 patent and its applicability to Novartis' commercial Gilenya® product." Mr. Iyer additionally asked "whether the parties could meet to discuss the '816 patent[.]" Later, unnamed "[r]epresentatives from Shilpa Medicare Ltd. and Shilpa [Pharma] met with Mr. Waibel on March 17 and discussed the '816 patent[.]" Shilpa admitted in subsequent correspondence that Mr. Iyer was present at the March 17 meeting. (*See* Ex. C (Oct. 28, 2021 Ltr. from Shilpa's counsel) ("[A] representative of Novartis, Mr. Waibel, met with Mr. Iyer and representatives of Shilpa Medicare Ltd. and Shilpa Pharma, Inc. on March 17, 2016 and discussed the '816 Patent.").) According to Shilpa's responses, "Mr. Waibel stated that they would consider the applicability of the '816 patent to the Gilenya® product and respond in due course. Mr. Iyer followed up in an email to Mr. Waibel of April 18, 2016." Thereafter, "Mr. Iyer and Mr. Waibel discussed the '816 patent in one or more subsequent phone conferences, but no agreement was reached." (Ex. A at 11.) Shilpa's interrogatory responses named no other Shilpa-side witness to these discussions besides Mr. Iyer.

**Interrogatory 4** asked Shilpa to "[i]dentify and describe . . . licenses . . . or any offers or negotiations therefor, including identifying all persons or entities . . . involved [and] . . . the circumstances surrounding" the negotiations. (*Id.*) Shilpa replied that "[o]ther than the matters referred to in Plaintiff's response to Interrogatory 3," there were none. (*Id.* at 12.)

**Interrogatory 7** asked Shilpa to elaborate on the "contention that Defendant's alleged infringement of any claim of the Asserted Patent is 'willful,' such as the contentions in Paragraph 51 of the Complaint," plus "that Defendants possessed or possesses the required mental state to be liable for indirect infringement, such as the contentions in Paragraphs 47 and 48 of the Complaint[.]" (*Id.* at 15.) Shilpa replied as follows:

- As to willfulness, "Shilpa met with Novartis in March, 2016, and its counsel corresponded with and spoke with Novartis' representative on several occasions before and afterward regarding the applicability of the '816 patent to Novartis' Gilenya® product as set forth in response to Interrogatory No. 3." Novartis thus "had knowledge of the '816 patent" but "declined interest in acquiring any rights under the '816 patent and never provided a basis for demonstrating a good faith belief that their Gilenya® product was not covered by one or more claims of the '816 patent." (*Id.* at 16.)

- On "intent" to induce under 35 U.S.C. § 271(b), "Novartis continues to actively promote the use of Gilenya® by patients and physicians after it had knowledge of the '816 patent." (*Id.*)

- And finally, on contributory infringement under 35 U.S.C. § 271(c), "Novartis' knowledge of the '816 patent, combined with its lack of any articulated good faith basis for noninfringement . . . support the culpable level of knowledge required under § 271(c)." (*Id.* at 17.)

Shilpa itself thus acknowledged the link between the February–April 2016 discussions and the Complaint's allegations of willful and intentional direct and indirect infringement. Not only is Mr. Iyer the only named Shilpa witness on those issues—he is the only Shilpa witness the responses identify by name at all. (*Id.* (*passim*).)

### Subsequent Developments

Shortly after receiving Shilpa's responses, Novartis sent Mr. Iyer a letter to alert him to the lawyer-witness problem revealed by the interrogatory responses. (*See* Ex. B (Oct. 28, 2021 Ltr. from Novartis's counsel).) Novartis identified Model Rule 3.7 and reasons why that rule appeared to apply here. (*See id.*) Novartis further explained that "[a]s outside counsel," Mr. Iyer "would be allowed access to all discovery in this case, including Highly Confidential-Attorney Eyes Only materials." (*Id.* at 2.) Novartis was "concerned that access to these materials could impact" Mr. Iyer's "memory and testimony about" his "2016 interactions with Novartis, however inadvertently. That risk, among others, illustrates the problem of" his "continued involvement as an advocate." (*Id.*) Novartis advised that, "[a]bsent an adequate response, Novartis will have no choice but to file a motion seeking all appropriate relief." (*Id.*)

Mr. Iyer's partner replied about six hours later. (Ex. E at 8.) He denied that Mr. Iyer would be a witness, and surmised that Novartis's counsel would face disqualification, too, by virtue of involvement in settling different cases about different Gilenya patents. (Ex. C.) Novartis replied the next day with further analysis (Ex. D), to no avail—Mr. Iyer's partner again threatened to seek to disqualify Novartis's outside counsel if this issue were brought to the Court (Ex. E at 3; Ex. F at 1–3). The parties further held a telephone meet and confer on November 15, 2021, but were unable to resolve the issue (Tren. Dec. ¶ 2).

Since this problem first surfaced, the case for disqualification has only grown. Shilpa has now served interrogatories and requests for production targeted specifically at the parties'

interactions in early 2016. (Ex. G at 11–12 (RFPs about the early 2016 discussions); Ex. H at 7–8 (interrogatories about the early 2016 discussions).) This is precisely the sort of information Mr. Iyer should not have access to as counsel given his role as a witness in this action. Mr. Iyer's mere exposure to such documents will contaminate his memory. No matter how earnest Mr. Iyer is in keeping his memory separate from his present advocacy, he cannot "un-see" the confidential materials. This situation is exactly what the lawyer-witness rule is designed to prevent. Upon review of Novartis's confidential materials, Mr. Iyer could, even inadvertently, shape his testimony about the 2016 discussions in a manner intended to help his client, confusing the two roles he finds himself in—witness and advocate. Novartis accordingly must move to disqualify.

## ARGUMENT

"The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation." *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3573812, at *1 (D. Del. Aug. 17, 2017) (citing *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). "As a general rule, the exercise of this authority is committed to the sound discretion of the district court[.]" *Miller*, 624 F.2d at 1201. The Court should exercise its discretion to disqualify Mr. Iyer.

Attorneys in this Court are "governed by the Model Rules of Professional Conduct of the American Bar Association." D. Del. L. R. 83.6(d); *see also See Princeton Digital Image Corp.*, 2017 WL 3573812, at *1 (applying Model Rules). Subject to irrelevant exceptions addressed below, Rule 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness[.]" Yet that is exactly the position Mr. Iyer is in. He is the only witness to Shilpa's side of the full 2016 discussions with Novartis. Those discussions are central. They are the basis for Shilpa's claims of willful and intentional direct and indirect infringement.

They are also likely relevant to royalty damages. As the only Shilpa-side witness to those discussions, Mr. Iyer cannot also serve as Shilpa's counsel.

Shilpa should bear the burden of showing otherwise. Shilpa and Mr. Iyer must have known before filing the Complaint that Mr. Iyer's testimony was central to willful and intentional direct and indirect infringement. "When the attorney in question is so clearly aware before the fact of the potential conflict between his roles as advocate and witness, then the scrutiny usually applied to an opposing party's motion for disqualification is unnecessary, and the burden shifts to the attorney in question." *Klupt v. Krongard*, 126 Md. App. 179, 207–08 (Md. 1999) (applying Maryland's identical version of Rule 3.7 and citing ABA, Annotated Model Rules of Professional Conduct 359 (3d ed. 1996) ("[I]f the lawyer knows before the litigation has commenced that his or her testimony might be required, then the burden is on the lawyer to establish an exception to the Rule if he or she is to avoid disqualification.")).

That makes sense. Comment 4 to Rule 3.7 says "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." This is not a situation where the movant has named the attorney as a witness for the movant as a pretext to seek disqualification—Novartis does not know how Mr. Iyer will testify, or which side his testimony will ultimately help. Courts may put the burden on the movant when gamesmanship is suspected. *Klupt*, 126 Md. App. at 206; *Matter of Est. of Waters*, 647 A.2d 1091, 1096–97 (Del. 1994). But here there is none. Mr. Iyer should bear the burden of showing how his participation as counsel can possibly pass muster.

In any event, however the burdens are allocated, he should be disqualified. The essential facts are undisputed—they come from Shilpa's own interrogatory responses.

## I.    The Court Should Disqualify Mr. Iyer

The Court should disqualify Mr. Iyer to protect the integrity of the trial process and avoid irreparable prejudice to Novartis, not to mention potential prejudice to Shilpa.

A lawyer who is also a witness "can prejudice the tribunal and the opposing party[,]" in addition to the lawyer's own client.  Model Rule 3.7, cmt. 1.  "[T]he trier of fact may be confused or misled by a lawyer serving as both advocate and witness" and "the combination of roles may prejudice" the opposing party's "rights in the litigation[,]" depending on "the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses[.]"  *Id.* cmts. 2, 4.

These factors all weigh against Mr. Iyer.  This is a patent damages case to be tried to a jury.  (*See* D.I. 1 at 17 ("Jury Trial Demanded").)  Disqualification is especially appropriate in jury cases, where the risk of confusion and prejudice from counsel's dual roles is highest.  *World Youth Day, Inc. v. Famous Artists Merch. Exch., Inc.*, 866 F. Supp. 1297, 1303 (D. Colo. 1994) (disqualifying an attorney because, *inter alia*, "there is a substantial risk that a jury will be confused by an advocate also appearing as a witness"); *Stewart v. Bank of America, N.A.*, 203 F.R.D. 585 (D. Ga. 2001) (same).  Plus, the 816 Patent claims a highly technical invention already likely to challenge a jury.  *See SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 571 (D. Del. 2013) ("[P]atent cases often implicate difficult subject matter that may be unfamiliar to most jurors.").  Compounding the confusion by allowing Mr. Iyer to serve as counsel will only make matters worse.

The case will also involve discovery of highly confidential documents of competitive and legal significance.  The parties accordingly have agreed to protective order provisions with multiple tiers that restricts a witness's access to protective material.  (*See* Ex. I at ¶¶ 2–5, 8–11.)  But Mr. Iyer, if not disqualified, would have unrestricted access to all tiers of Novartis documents—including any related to advice of counsel, should Novartis assert such a defense.

Shilpa recently served discovery seeking just such materials. (*See* Ex. G at 11–12 (RFPs about the early 2016 discussions); Ex. H at 7–8 (interrogatories about the early 2016 discussions).)

That access would allow Mr. Iyer in his role as zealous advocate to shape testimony to Shilpa's advantage, even innocently—a direct conflict with his other role as sworn witness. *See Waters*, 647 A.2d at 1097–98 (disqualifying counsel under Delaware's identical Rule 3.7; among other things, dual role threatens "the integrity of the judicial proceedings" because "the attorney may either be accused of distorting the truth for the client's benefit"); *see also Jones v. City of Chicago*, 610 F. Supp. 350, 362 (N.D. Ill. 1984) ("The major purpose behind the advocate-witness rule is to avoid confusion between the role of the advocate and the role of the witness. The advocate's function is to advance or argue the cause of another, while that of a witness is to state facts objectively." (citation omitted)). As a court has held in another patent case, potential testifying "counsel should not be given access to the defendant's information that could consciously or unconsciously affect their testimony regarding the patent-in-suit[.]" *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline*, PLC, 236 F.R.D. 583, 587 (S.D. Fla 2006) (denying potential testifying counsel access to protective order material).

Here, for instance, Shilpa claims Mr. Iyer told Novartis in 2016 that Gilenya infringed the 816 Patent. (D.I. 1 ¶¶ 28, 49; Ex. A (Interrogatory Responses) at 10–11.) That supposedly put Novartis on notice of infringement. But that assertion conflicts with other parts of the interrogatories, which say that Shilpa did not test Gilenya for infringement until *after* speaking with Novartis. (Ex. A at 8.) Novartis believes the evidence is likely to show that Shilpa did not put Novartis on notice that Gilenya infringed the Patent. That is the opposite of what the interrogatory responses say. Thus, the details of what Mr. Iyer said and how Novartis responded will surely be probative of Novartis's state of mind, and hence willfulness and intent for direct and

indirect infringement.  Access to Novartis's internal documents could alter Mr. Iyer's testimony regarding that back-and-forth to Shilpa's advantage, consciously or unconsciously.  The lawyer-witness rule exists to protect against that risk.

Likewise, Mr. Iyer would also be involved in depositions.  This, too, would create an unacceptable taint to the proceedings.  As examining or defending counsel, Mr. Iyer "may, perhaps even inadvertently, interject unsworn testimony into the cross-examination of other witnesses." *Waters,* 647 A.2d at 1097–98; *see also* Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 680 (2d ed. 1993) ("The interest of the opposing party protected by Rule 3.7 is parallel to that protected by Rule 3.4(e), which forbids an advocate from voicing personal opinions about the merits of a cause.").  Such conduct would prejudice not only Novartis, but also the tribunal; "[i]mmediate disqualification is warranted because [depositions] will undoubtedly involve obtaining evidence such that" counsel's "dual roles will be revealed at trial." *Turner v. AIG Domestic Claims, Inc.*, No. 4:10CV3159, 2011 WL 2632893, at *8 (D. Neb. July 5, 2011), *rev'd*, 823 F. Supp. 2d 899 (D. Neb. 2011).

Finally, even in arguments to the Court, Mr. Iyer's dual role would be inappropriate.  In arguments, Mr. Iyer "may be called upon by other evidence to argue his or her own credibility to the trier of fact," or "may, in effect, give 'unsworn' testimony during arguments to the trial judge and/or jury." *Waters*, 647 A.2d at 1098.

For all these reasons, Mr. Iyer's testimony easily meets the requirements of Rule 3.7—his testimony is "necessary"; no exception applies; and he should thus be disqualified from the case.

### A.      Mr. Iyer Is a "Necessary" Witness

Under any view, Mr. Iyer is likely to be a "necessary" witness.  "A lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere*." Carta ex rel. Est. of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp.

2d 23, 29 (D. Mass. 2006) (citing *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003)); *see also* American Bar Association, Professional Responsibility in Litigation, 2016 Edition, Chapter 13: Lawyers as Witness, at 675 (lawyer "necessary" under Rule 3.7 if testimony "is relevant, material, not merely cumulative, and unobtainable elsewhere").  Mr. Iyer's testimony qualifies.

*First*, his testimony is relevant and material.  Shilpa itself cites Mr. Iyer as the only named witness to Shilpa's side of the licensing discussions, and relies on those discussions as evidence of willful direct and indirect infringement.

To show willfulness, Shilpa must provide "proof that the defendant knew about the asserted patents and knew or should have known that its conduct amounted to infringement of those patents."  *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249 (D. Del. 2021) (citing *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2019 WL 1349468, at *1 (D. Del. Mar. 26, 2019)).  To show induced and contributory infringement, Shilpa must show "proof that the defendant's conduct occurred after the defendant (1) knew of the existence of the asserted patent and (2) knew that a third party's acts constituted infringement of the patent."  *Id.* (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015)).  Mr. Iyer is a firsthand witness to interactions that Shilpa contends provide this proof.

Shilpa suggested during the meet and confer process that Mr. Iyer's testimony is not "necessary" because Shilpa does not intend to call him as a witness.  But "the advocate-witness rule protects opposing parties and the integrity of the judicial system as a whole," so "the client's consent to the representation or willingness to forgo the lawyer's testimony will not prevent disqualification if the lawyer's testimony is deemed 'necessary.'"  Model Rule 3.7 (citing *Premium Prods., Inc. v. Pro Performance Sports*, LLC, 997 F. Supp. 2d 433 (E.D. Va. 2014); *MacArthur v.*

*Bank of N.Y.*, 524 F. Supp. 1205 (S.D.N.Y. 1981); *Freeman v. Vicchiarelli*, 827 F. Supp. 300 (D.N.J. 1993)).

For instance, even if Shilpa does not call Mr. Iyer, Novartis may do so (depending on the result of discovery between now and trial). Moreover, even if neither party calls Mr. Iyer, the 2016 discussions are likely to be a subject at trial. Any Novartis witness to those discussions will have to describe communications with Mr. Iyer. If not disqualified, he will be present in the courtroom but never put on the stand. That sets the stage for an "unsworn witness" problem—Mr. Iyer could argue with Novartis's testimony through cross-examination or commentary to the jury. As shown above (at 11), this is precisely one of the risks the lawyer-witness rule protects against.

**Second**, Mr. Iyer is the sole witness to Shilpa's side of the story, and his testimony is not merely cumulative. Indeed, he is the only witness Shilpa identifies by name to those discussions. The other unnamed witness are from non-Party Shilpa Medicare, an Indian company. Shilpa has not listed those witnesses in Rule 26(a) disclosures. (Ex. J.) There is no guarantee they will be available or subject to process. But even if they are, Shilpa admits that Mr. Iyer is the sole witness to at least two relevant phone conferences with Novartis in 2016, and possibly more. He is thus the sole source of Shilpa's side of the entire story.

During the meet and confer process, Shilpa suggested that Novartis witnesses and documents may suffice to establish the facts Mr. Iyer knows. This theory has no merit. Courts regularly find a lawyer-witness "necessary" when to tell one side's perspective on a disputed subject, even when there is other evidence of the interaction. For instance, in *Klupt*, the court applied Maryland's identical version of Rule 3.7 to disqualify counsel who had participated in negotiating the underlying patent license in dispute, even though the opposing party was involved in those negotiations too—a circumstance strikingly similar to the one here. 126 Md. App. at 209.

*See also SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 141 F. Supp. 2d 616, 625–26 (W.D.N.C. 2001) (disqualifying patent licensee's former lead counsel, as prior work gave him knowledge of parties' course of conduct under license and it was possible he would be called as witness).

Similarly, in *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 716 (6th Cir. 1982), the court found an attorney "necessary" in an abuse of process claim when the attorney was involved in a telephone conversation about the merits of the case—even though others participated in that conversation too. And, in *VanNostrand v. New York Cent. Mut. Fire Ins. Co.*, 127 A.D.3d 851, 852 (2d Dep't 2015), an attorney involved in settlement negotiations was deemed necessary to providing one side's perspective. The same is true in many other cases.[1]

Shilpa accordingly cannot rely on Novartis's evidence to remedy this situation of Shilpa's own making.

### B.     No Exception to Rule 3.7 Applies

Rule 3.7 provides that a trial lawyer may sometimes be a witness in three limited circumstances, none of which applies here. Mr. Iyer's testimony does not relate "to an uncontested issue," Model Rule 3.7(a)(1)—Novartis vigorously contests willful and indirect infringement. Novartis's Answer (D.I. 13) disputes every one of those allegations (*id.* ¶¶ 29–52). Nor does his

---

[1] *See, e.g.*, *Dunlap v. State Farm Fire & Cas. Co.*, 955 A.2d 132, 149 (Del. Super. Ct. 2007) (disqualifying lawyer who participated in telephone negotiations with insurance company in case against that company); *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 628 (Ark. 2004) (disqualifying lawyer in bad faith case against the insurance company concerning settlement negotiations involving the disqualified attorney); *Corona v. Hotel & Allied Servs. Union Loc. 758*, No. 04-CV-10074 (CSH), 2005 WL 2086326, at *8 (S.D.N.Y. Aug. 30, 2005) (disqualifying counsel involved in union negotiations in labor dispute even though other witnesses to the negotiations existed); *Finn v. Harbor Metal Treating Inc.*, No. 3:09-CV-130CAN, 2009 WL 3642753, at *4 (N.D. Ind. Oct. 29, 2009) (disqualifying attorney involved in one side of underlying negotiation of disputed contract); *Fuller v. Collins*, 114 A.D.3d 827, 829 (2d Dep't 2014) (disqualifying an attorney where attorney and adversary were sole source of contract discussions).

testimony relate to "the nature and value of legal services rendered in the case." Model Rule 3.7(a)(2). And his disqualification would not inflict "substantial hardship" on Shilpa. *Id.* 3.7(a)(3).

The hardship exception applies only "where the lawyer-client team come unexpectedly upon a disqualification situation, against which they neither actually did nor could have safeguarded themselves." *General Mill Supply Co.*, 697 F.2d at 713. The exception is not "meant for a case where a possible disqualification dilemma was visible years before it arose, yet the parties went right on increasing the helpless dependence of client upon lawyer." *Id.* In other words, "[a] self-inflicted injury is not a hardship." *Id.*[2]

So it is here. Shilpa and Mr. Iyer had to know of his importance as a witness before commencing the litigation. They cannot now complain of hardship. Plus, this case is at an early stage, further mitigating any inconvenience to Shilpa. *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1380 (E.D. Pa. 1994), *aff'd*, 107 F.3d 1026 (3d Cir. 1997) (no substantial hardship for disqualification where, among other things, "[t]he defendants' motions are timely," "[n]o trial date has been set[,] and discovery has barely begun"); *Carta ex rel. Estate of Carta*, 419 F. Supp. 2d at 32 (early disqualification causes less hardship; "little (if any) discovery has yet taken place in this case, so successor counsel would not have to come into a case that was already well underway"). Two other Sughrue partners have already appeared. (D.I. 1, 16, 38.)

---

[2] *See also Thomas Steel Corp. v. Ameri-Forge Corp.*, No. 91 C 2356, 1991 WL 280086, at *3 (N.D. Ill. Dec. 27, 1991) ("Arguments concerning the attorney's longstanding involvement in the litigation and the client's financial hardship are generally insufficient to invoke the 'substantial hardship' exception to Rule 3.7, particularly when the problem is largely of the party's own making."); *Jones*, 610 F. Supp. at 361 ("[C]ourts have generally rejected arguments that a lawyer's long-standing relationship with a client, involvement with the litigation from its inception or financial hardship to the client are sufficient reasons to invoke the 'substantial hardship' exception to the advocate-witness rule."—disqualifying attorney from all trial and pretrial proceedings and disqualifying attorney's firm from trial, but not pretrial proceedings).

Shilpa further is an experienced patent litigant that has used multiple firms for such litigation.[3] Shilpa thus has many options. Compared to the harm from allowing Mr. Iyer to remain as counsel, the inconvenience to Shilpa in proceeding with other counsel will be miniscule.

### C. Mr. Iyer's Disqualification Should Be Total

Although Rule 3.7 says that a lawyer-witness "shall not act … at a trial," courts can and do disqualify counsel for the entire case, including both pretrial and trial. The Third Circuit upheld just such a disqualification in *U.S. v. Merlino*, 349 F.3d 144, 152 (2003), albeit in a criminal case. Other courts regularly exercise their direction to make a blanket disqualification.[4]

---

[3] For example, Shilpa has used the following law firms: (i) Bayard, P.A., Carlson Caspers (*see Biogen MA Inc. v. Shilpa Medicare Limited*, No. 1:17CV00847 (D. Del. June 28, 2017)); (ii) Sills Cummis & Gross P.C. (*see Eisai R&D Management Co., Ltd. et al. v. Shilpa Medicare Limited*, No. 3:20CV06729 (D.N.J. June 1, 2020)); (iii) Smith, Katzenstein, & Jenkins LLP (*see Genentech, Inc. et al. v. Shilpa Medicare Limited*, No. 1:20CV00624 (D. Del. May 8, 2020); *Gilead Sciences, Inc. v. Apotex, Inc. et al.*, No. 1:20CV00189 (D. Del. Feb. 7, 2020); *Pharmacyclics LLC et al. v. Shilpa Medicare Limited et al.*, No. 1:18CV00237 (D. Del. Feb. 9, 2018); *Novartis Pharmaceuticals Corporation et al. v. Shilpa Medicare Limited*, No. 1:15CV01111 (D. Del. Nov. 30, 2014)); (iv) Benesch Friedlander Coplan & Aronoff (*see Sanofi-Aventis U.S. LLC et al. v. Shilpa Medicare Limited*, No. 1:19CV01975 (D. Del. Oct. 17, 2019); *OSI Pharmaceuticals, LLC et al. v. Shilpa Medicare Limited*, No. 1:18CV01096 (D. Del. July 25, 2018); *Amgen Inc. v. Shilpa Medicare Ltd.*, No. 3:18CV11157 (D.N.J. June 27, 2018)), and (v) Windels Marx (*see Genentech, Inc., et al. v. Apotex Inc., et al.*, No. 1:19CV00078 (D. Del. Jan. 14, 2019)).

[4] *See, e.g.*, *Dunlap*, 955 A.2d at 149 (blanket disqualification for pretrial and trial); *Shipley v. Schlecker*, No. CIV.A. 2002-01-422, 2002 WL 32072579, at *2 (Del. Com. Pl. Dec. 2, 2002) (same); *Emerald Partners v. Berlin*, 564 A.2d 670, 680 (Del. Ch. 1989) (same); *In re Corp. Res. Servs., Inc.*, 576 B.R. 779, 789 (Bankr. S.D.N.Y. 2017), *rev'd and remanded*, 595 B.R. 434 (S.D.N.Y. 2019) (same); *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 792 (S.D.N.Y. 2015) (same); *iHealthcare, Inc. v. Greene*, No. 2:11 CV 396, 2012 WL 2026361, at *8 (N.D. Ind. June 5, 2012) (same); *Turner*, 2011 WL 2632893, at *8 (same); *E.E.O.C. v. Bardon, Inc.*, 2010 WL 323067, at *3 (D. Md. Jan. 19, 2010) (same); *Finn*, 2009 WL 3642753, at *4 (same); *Carta ex rel. Estate of Carta*, 419 F. Supp. 2d at 29 (same); *Corona*, 2005 WL 2086326, at *8 (same); *Stewart*, 203 F.R.D. at 588 (same); *Freeman*, 827 F. Supp. at 307 (same); *Sherwood Grp., Inc. v. Rittereiser*, No. CIV. 90-2414 (CSF), 1991 WL 87578, at *3 (D.N.J. May 20, 1991) (same); *Jones*, 610 F. Supp. at 362 (same); *Jensen v. Poindexter*, 352 P.3d 1201, 1208 (Okla. 2015) (same); *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 417 (Md. 2014) (same); *Rumpza v. Donalar Enterprises, Inc.*, 581 N.W.2d 517, 525 (S.D. 1998) (same).

*Klupt* is instructive. There, the court applied Maryland's version of Model Rule 3.7 to disqualify an attorney who had negotiated the patent license in dispute. 126 Md. App. at 207–09. The court ordered disqualification shortly after the attorney filed the complaint and appeared in the case, and for all purposes. *Id.* at 203–07. This Court should do the same here.

As shown above (at 12–14), the nature of this case is such that Mr. Iyer's participation in pretrial proceedings will irreparably taint the case. Only blanket disqualification can preserve the record's integrity. Importantly, the issues on which Mr. Iyer claims to have evidence are very significant. For example, proof of willfulness could entitle Shilpa up to treble normal damages. 35 U.S.C. § 284. Gilenya sales from 2016 to 2020 were about $8.45 billion.[5] A mere 1% royalty on that amount would be $84.5 million. A willfulness finding could add as much as $169 million— or ten times that amount if the royalty awarded is 10%. So there can be no dispute that Mr. Iyer's role as a witness has potentially weighty implications. The adjudication of such a significant question should not be tainted by his presence as counsel.[6]

---

[5] US Product Net Sales from 2018 Novartis Annual Report: +1,683 MM (2016) + 1,709 MM (2017); US Product Net Sales from 2020 Novartis Annual Report: +1,765 MM (2018) + 1,736 MM (2019) + 1,562 MM (2020). Total from 2016 through 2020 = $8.45 billion. (*See* Ex. K.)

[6] At this stage of the case, the details of Mr. Iyer's testimony are unknown. If his testimony ends up being at all adverse to Shilpa, then Sughrue itself may have a conflict, which may or may not be waivable by Shilpa. "[I]f there is likely to be substantial conflict between the testimony of the client and that of the lawyer, the representation involves a conflict of interest that requires compliance with Rule 1.7." Model Rule 3.7, cmts. 1, 6. "If … the testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10 unless the client gives informed consent under the conditions stated in Rule 1.7." *Id.* at cmt. 7. "Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved." *Id.* at cmt. 6. Novartis accordingly urges Sughrue to fully vet the issue, and reserves all rights in the event a conflict for the firm later becomes clear.

## II.    Alternatively, Mr. Iyer Should Be Barred from Most Pretrial Activities, and Trial

Courts sometimes bar counsel only from pieces of a case under Rule 3.7.  As shown above, this case is such that a blanket disqualification is the most practical result.  But if the Court were inclined to consider another route, then Mr. Iyer should be barred from at least the following aspects of the proceeding:

1.    Mr. Iyer should not receive access to any confidential Novartis documents, directly or indirectly.  (*See* above at 10 (quoting *Andrx*, 236 F.R.D. at 587).)  Such access would unfairly risk tainting Mr. Iyer's role as a witness, potentially shaping his testimony, whether consciously or unconsciously, in response to the evidence.

2.    Mr. Iyer should be barred from appearing at any depositions, both because confidential information may be discussed, and to avoid the "unsworn witness" problem.[7]  (*See* above at 11–13.)

3.    Mr. Iyer should be barred from participating at trial and any hearing with the Court that touches upon the 2016 licensing discussions with Novartis (other than as a witness).  (*See* *above* at 9–12.)

---

[7] *See, e.g.*, *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 758 (D. Minn. 2008) (explaining "if an attorney witness conduct[s] depositions in this litigation" "[t]here is a risk that such evidence will reveal Wolfe's role as an attorney, which especially in complex patent litigation, may cause prejudice or confusion"); *World Youth Day, Inc.*, 866 F. Supp. at 1304 (disqualifying an attorney and prohibiting him from taking or defending depositions because, inter alia, "it is naive to believe that depositions are divorced from trial advocacy. . . . The skill of deposing counsel on direct and cross-examination is necessarily woven into the fabric of the trial itself."); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126–27 (D. Kan. 2004) (disqualifying an attorney from trial and from taking or defending depositions because he was a necessary witness); *ASI, Inc. v. Aquawood, LLC*, No. 19-CV-0763 (JRT/HB), 2021 WL 2374864, at *6 (D. Minn. June 10, 2021) (barring attorney from "participat[ing] in the deposition of Brian Dubinsky, because the Court sees no reasonable way to mitigate against the potential confusion of Weisbrod as deposing attorney with Weisbrod as a witness with first-hand knowledge").

Even with these protections, Mr. Iyer's double role would still pose an unacceptable risk, and for that reason Novartis submits he should be disqualified outright.  But if the Court thinks otherwise, then Novartis respectfully submits that these are the minimum protections required.

**CONCLUSION**

For the foregoing reasons, Novartis respectfully requests that the Court disqualify Chidambaram S. Iyer from further representing Shilpa in this action.

Dated:  November 22, 2021

OF COUNSEL:

Jane M. Love, Ph.D.
Robert W. Trenchard
Paul E. Torchia
Kyanna Sabanoglu
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Tel:  (212) 351-4000
jlove@gibsondunn.com
ptorchia@gibsondunn.com
ksabanoglu@gibsondunn.com

David Glandorf
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
dglandorf@gibsondunn.com

Emily M. Whitcher
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive,
Irvine, CA  92612
ewhitcher@gibsondunn.com

Respectfully submitted,

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Defendant*
*Novartis Pharmaceuticals Corporation*

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHILPA PHARMA, INC.

            Plaintiff,

            v.

NOVARTIS PHARMACEUTICALS
CORPORATION,

            Defendant.

C.A.No. 21-558-MN

## [PROPOSED] PROTECTIVE ORDER

WHEREAS discovery in this Action may involve the disclosure of certain documents, things, and information in the possession, custody, or control of the plaintiff, Shilpa Pharma, Inc. ("Shilpa") and defendant, Novartis Pharmaceuticals Corporation ("Novartis"), or nonparties that constitute or contain trade secrets or other confidential research, development, or proprietary business information within the meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure;

WHEREAS such confidential information must be protected to preserve the legitimate business interests of the parties or nonparties;

WHEREAS the parties, through counsel, have stipulated to the entry of this protective order for the purpose of advancing the progress of this action and to prevent unnecessary dissemination or disclosure of their respective confidential information; and

WHEREAS the parties, through counsel, stipulate that good cause exists for the entry of this protective order pursuant to Rule 26(c) to safeguard against improper disclosure or use of confidential information produced in this action;

It is hereby ORDERED that the following provisions shall govern the conduct of further proceedings in this action:

## Definitions

1.     The term "Protected Information" shall include all information that the designating party believes constitutes, discloses, or relates to proprietary business information, processes, operations, research, technical or developmental information, production, marketing, sales, shipments, or other proprietary data or information of commercial value not generally available to the public, including, but not limited to, trade secrets.  The information contained therein and all copies, abstracts, excerpts, analyses, or other writings that contain, reflect, reveal, suggest, or otherwise disclose such Protected Information shall also be deemed Protected Information.  Each party shall act in good faith in designating information as Protected Information.

2.     "CONFIDENTIAL" information means Protected Information designated in accordance with paragraph 6.

3.     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information means Protected Information that is the subset of CONFIDENTIAL information designated in accordance with paragraph 8.

4.     "SPECIAL PROTECTED DATA" means Protected Information designated in accordance with paragraph 10.

5.     The term "Qualified Person" shall mean:

(a)     Court and any Court personnel involved with this action;

(b)     Shilpa's outside counsel, their legal assistants, and members of their support staffs [**Defendant's Proposal**:, with the exception of Chidambaram S. Iyer;[1]]

---

[1]  Until the parties' dispute regarding Mr. Iyer is resolved, Mr. Iyer may not access information designated pursuant to this Protective Order as CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY OR SPECIAL PROTECTED DATA, and Sughrue Mion LLC shall implement a formal ethical screen between Mr. Iyer and all attorneys and non-legal staff currently working on, or who in the future work on, this action to ensure that Mr. Iyer has no access to information designated pursuant to this Protective Order as CONFIDENTIAL, HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY OR SPECIAL PROTECTED DATA.

(c)     Novartis's outside counsel, their legal assistants, and members of their

support staffs [**Plaintiff's Proposal:**, with the exception of Dr. Jane Love, Paul Torchia, Robert

Trenchard, Christine Ranney, Kyanna Sabanoglu, Daniel Silver and Alexandra Joyce;[2]]

(d)     Any independent expert or consultant who is retained by counsel solely

for the purpose of assisting in this action, subject to the provisions of paragraph 22;

(e)     Photocopy services;

(f)     Professional translators who are retained by the attorneys for the parties

for the purposes of this litigation;

(g)     Stenographic reporters, videographers, official court reporters, and their

assistants who are engaged in such proceedings as are necessary for the preparation and trial of

this action;

(h)     Jury or trial consultants and persons employed or retained by them solely

in providing litigation support services to the parties' outside counsel law firms;

(i)     Document imaging and database services and consultants retained to set

up, maintain, and/or operate litigation databases for this litigation;

(j)     Graphics or design consultants retained to prepare demonstrative or other

exhibits for use in this action;

(k)     Up to three in-house personnel for the receiving party and their respective

secretarial, clerical, paralegal and other supporting personnel who:  (i) are responsible for

monitoring and/or supervising this action, and (ii) do not engage formally or informally, or

directly or indirectly, in (A) any patent prosecution in accordance with paragraph 22, (B)

---

[2]     Until the parties' dispute regarding these attorneys are resolved, they may not access
information designated pursuant to this Protective Order as CONFIDENTIAL, HIGHLY
CONFIDENTIAL-ATTORNEYS' EYES ONLY OR SPECIAL PROTECTED DATA, and
Gibson Dunn and McCarter & English LLP shall each implement a formal ethical screen
between the named attorneys and all other attorneys and non-legal staff currently working on,
or who in the future work on, this action to ensure that the named attorneys have no access to
information designated pursuant to this Protective Order as CONFIDENTIAL, HIGHLY
CONFIDENTIAL-ATTORNEYS' EYES ONLY OR SPECIAL PROTECTED DATA.

preparing submissions to FDA or a foreign equivalent concerning fingolimod—except for submissions relating solely to obtaining approval or maintaining approval of the receiving party's own NDA or ANDA—unless requested by the FDA or otherwise required by law, or (C) any Competitive Decision-Making (business or strategic decisions, including marketing, financial, product development/design, and pricing decisions, on issues affecting competition) relating to fingolimod products, compositions or formulas, for the duration of this action and for two years after entry of final judgment from which no appeal may be taken (or the dismissal of this action) without first obtaining (1) consent from the Producing Party or (2) an order from the Court. Competitive Decision-Making shall be interpreted consistently with the Federal Circuit's decision in *In re Deutsche Bank*, 605 F.3d 1373 (Fed. Cir. 2010), and shall not include decision-making as an attorney related to this action;

       (i)      For Shilpa, these in-house legal personnel shall include _____.

       (ii)     For Novartis, these in-house legal personnel shall include _____.

       (iii)    The parties reserve the right to propose to designate additional in-house legal personnel employed by the parties at a later date.

(l) Any other person who is designated as a Qualified Person by order of the Court or by written agreement of the parties, provided that such person completes and signs the undertaking in the form of Exhibit A.

## Use of Protected Information

6. A producing party may designate any material "CONFIDENTIAL" for protection under this protective order where that material constitutes or discloses "CONFIDENTIAL" information. "CONFIDENTIAL" information, as that term is used herein, comprises information that the producing party in good faith contends to constitute or contain information that is (a) confidential, sensitive, competitive, or potentially invasive of an individual's privacy interests; (b) not generally known in the context or form as known by the producing party; (c) not normally revealed to the public or third parties or, if disclosed to third parties, is such that the producing party would require such third parties to maintain the information in confidence; and

(d) information (regardless of how generated, stored, or maintained) or tangible things that qualify for protection under standards developed under Fed. R. Civ. P. 26(c). "CONFIDENTIAL" information includes, but is not limited to, confidential research, development, technical, commercial, or financial information, as well as other such information that the requesting party and non-parties would not have access to but for this litigation.

7.      Access to any "CONFIDENTIAL" information shall be limited to Qualified Persons as described in paragraph 5.

8.      A producing party may designate any material "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" for protection under this protective order where the producing party believes in good faith that the material constitutes or discloses highly sensitive business information or items the unrestricted disclosure of which to a requesting party or a receiving party would create a substantial risk of harm, including, but not limited to, the producing party's planned commercial products and planned licensing agreements.  As that term is used herein, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information and items consist of: (a) highly sensitive information relating to the development of pharmaceutical products; (b) financial or business reports and forecasts including plans, strategies, market analyses, costs, and pricing information; (c) highly sensitive planned licensing agreements; and (d) pending or abandoned patent, trademark, and copyright applications, foreign or domestic, unless published or otherwise publicly available.

9.      Access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information and items shall be limited strictly to the persons designated as having access to "CONFIDENTIAL" information in paragraphs 5(a)-5(j) and 5(l), except that, unless otherwise agreed, no outside counsel who is involved in competitive decision-making, as defined *In re Deutsche Bank*, 605 F.3d 1373 (Fed. Cir. 2010), shall have access to material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Persons designated in paragraph 5(k) ("in-house personnel") are strictly prohibited from viewing any information designated "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY."

10.     A producing party may designate any material "SPECIAL PROTECTED DATA" for protection under this protective order where the producing party believes in good faith that the information, including personally identifiable information, is subject to federal, state, or foreign Data Protection Laws or other privacy obligations.  Examples of such Data Protection Laws includes, without limitation, The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.* (financial information); The Health Insurance Portability and Accountability Act and the regulations thereunder, 45 CFR Part 160 and Subparts A and E of Part 164 (medical information), the Swiss Federal Act on Data Protection of June 19, 1992, Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation), the German Federal Data Protection Act of June 30, 2017, and the UK Data Protection Act 2018.  "SPECIAL PROTECTED DATA" shall be handled by the receiving party with the highest care and may compel alternative or additional protections beyond those afforded "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" information, in which case the parties shall meet and confer in good faith, and, if unsuccessful, shall move the Court for appropriate relief.

11.     Access to "SPECIAL PROTECTED DATA" shall be limited strictly to the persons designated as having access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information.

12.     Protected Information will be used solely for the purpose of prosecuting, defending, or settling this action, including any appeal and retrial, and will not be used for other purposes including but not limited to patent licensing or for communications, petitioning, litigation, or counseling with or before the U.S. Patent & Trademark Office, FDA, the United States Pharmacopoeia, or any similar foreign or domestic agency.

13.     Nothing in this protective order shall prevent any person, including a Qualified Person, from making use of any information that is designated as Protected Information if such information:

(a)     Was lawfully in his or her possession prior to receipt under the provisions of this protective order;

(b)     Was or becomes available to the public through no fault of a receiving party;

(c)     Was or is obtained from a source not under an obligation of secrecy to the designating party; or

(d)     Is exempted from the operation of this protective order by written consent of the designating party.

14.     If any person disputes or challenges the designation of any information as Protected Information based on any ground specified in subparagraphs (a) through (c) of paragraph 13, such information shall nevertheless be treated according to its specific designation as Protected Information ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and/or "SPECIAL PROTECTED DATA") in accordance with the provisions of this order until such designation is removed by order of the Court or by written consent of the designating party.

**Disclosure of Protected Information**

15.     Protected Information shall not be shall not be revealed, disclosed, described, summarized, or otherwise communicated or made known to any person or entity, directly or indirectly, other than a Qualified Person (or, in the case of "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" information or "SPECIAL PROTECTED DATA," the persons identified in paragraph 9 above), or the party who produced such Protected Information, except as otherwise provided in this Order.

16.     A document that contains or reveals Protected Information may be shown to any person who authored or previously had access to or knowledge of the document, as demonstrated by the document itself or by foundation testimony during a deposition, hearing, or trial.

17.     Protected Information may be disclosed to a witness testifying under oath if the witness is an officer, director, employee, consultant, expert or representative of the party who

produced such Protected Information.

18.     Protected Information may be disclosed to a witness testifying under oath if (a) the witness was formerly an officer, director, employee, consultant, expert, clinical investigator, patent agent or attorney of the party who produced such Protected Information; (b) the Protected Information was in existence during the period of his or her service or employment; and (c) it is reasonable to conclude that the witness was involved in the project to which the Protected Information relates.

19.     This order shall not prevent counsel from examining a witness testifying under oath in a good-faith effort to determine whether the witness has discoverable information about the Protected Information.

20.     Nothing in this protective order shall prevent disclosure of Protected Information if the producing party consents to such disclosure or if the Court, after notice to all parties, orders such disclosure.

21.     Counsel desiring to disclose Protected Information to an individual according to paragraph 5(d), 5(f), 5(h), 5(j), 5(k), or any other person according to paragraph 5(l) shall first obtain a signed declaration in the form shown in attached Exhibit A from that person.  For independent experts or consultants according to paragraph 5(d), or for any changes to the individuals identified in subparagraph 5(k), at least seven (7) days in advance of the proposed disclosure of any Protected Information to that person, counsel shall serve that person's signed declaration and *curriculum vitae* or resume by facsimile or electronic mail on the other party. The identification of an independent expert or consultant according to paragraph 5(d) shall include the full name and professional address and/or affiliation of the proposed expert or consultant, an up-to-date *curriculum vitae*, any prior or current employments or consultancies for any party within the last five years (except those engagements that are protected from disclosure pursuant to Fed. R. Civ. P. 26), including a list of the cases in which the expert or consultant has testified at deposition, at a hearing, or at trial within the last four years.  A party may object for cause to the proposed disclosure by serving a written objection within seven (7) days after

receiving the copy of the signed declaration. Failure to timely object shall operate as a waiver of the objection. If a party objects to the proposed disclosure, the objecting party's Protected Information shall not be disclosed to such person except by order of the Court or by written consent of the objecting party. In the event that a motion is made, the objecting party shall have the burden of proving that disclosure should not be made.

22.     For the duration of this action and for two years after entry of final judgment from which no appeal may be taken, anyone according to paragraph 5 who receives another party's Protected Information shall not be involved, directly or indirectly, in the prosecution of any patent application, including reissue, directed to Gilenya described in NDA No. 022527 or any fingolimod drug product, any method of manufacture of any fingolimod drug product, or any characterization of or method of characterizing the crystal forms of fingolimod. For the avoidance of doubt, "prosecution" as used in this Order does not include engaging formally or informally, or directly or indirectly, in any post-grant proceedings before the Patent Trial and Appeal Board at the U.S. Patent and Trademark Office, including any *Inter Partes* Review, post-grant review, or reexamination proceeding.

23.     If a party intends to reveal Protected Information of another party during a trial, court appearance, or hearing, which is open to the public, the party intending to reveal such Protected Information shall provide reasonable notice and opportunity to object to the party that produced the Protected Information, unless consent from the party that produced the Protected Information party was previously obtained.

24.     Should any Protected Information be disclosed, through inadvertence or otherwise, by a receiving party to any person not duly authorized to receive such information under this protective order, then the receiving party responsible for such disclosure shall promptly notify opposing counsel of all pertinent facts and make every effort to prevent further unauthorized disclosure, including retrieving all copies of the Protected Information from the unauthorized recipient(s) thereof and requesting that each such recipient execute the declaration attached as Exhibit A.

### Identification and Marking of Protected Information

25.     Any document or other tangible thing that contains or reveals Protected Information shall be labeled with the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY," and/or "SPECIAL PROTECTED DATA," or a marking of like import.  Such marking shall appear on each page of the document that contains Protected Information.  For pleadings and discovery responses, such marking need only appear on the first page of the document.  Any document or other tangible thing so labeled and the information that it contains or reveals shall be treated in accordance with the provisions of this protective order.  Any Protected Information not reduced to documentary or physical form or which cannot be conveniently labeled shall be so designated by a party by serving a written notification on the receiving party within a reasonable amount of time after disclosure.

26.     When a party initially produces documents for inspection, no marking need be made by the producing party in advance of the inspection.  For purposes of the inspection, all documents shall be treated as containing Protected Information.  After the receiving party selects specified documents for copying, the producing party shall appropriately mark the copies of the selected documents before they are provided to the receiving party.

27.     Only Qualified Persons, the deponent, and the court reporter and videographer shall be allowed to attend any portion of a deposition in which Protected Information is used or elicited from the deponent.  The deposition of any witness (or any portion of such deposition) that encompasses "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" information or "SPECIAL PROTECTED DATA" shall be taken only in the presence of persons who are qualified to have access to such information.

28.     Unless otherwise agreed, depositions shall be treated as containing "CONFIDENTIAL" information during the thirty (30) day period following receipt of the transcript.  If a party contends that the deposition transcript contains "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" information, "SPECIAL PROTECTED DATA," or does not contain Protected Information, that party will be required to affirmatively

designate, in writing or on the record, the transcript, or portions of the transcript, as "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," "SPECIAL PROTECTED DATA," or as not containing Protected Information within the thirty (30) day period following receipt of the transcript. If they do not, the transcript shall continue to be treated as containing "CONFIDENTIAL" information.

29.    A non-party to the litigation (e.g., a third party producing information pursuant to subpoena) may designate such information as Protected Information as set forth in paragraph 25, *supra*. If so designated, such Protected Information shall be subject to the same restrictions and conditions as information designated by any party as Protected Information. Nothing in this provision shall limit the ability of a party to designate such information produced by a third party as Protected Information.

## Inadvertent Failure to Designate

30.    The inadvertent failure by a producing party to designate specific documents or materials as containing Protected Information shall not be deemed a waiver in whole or in part of a claim of confidentiality as to such documents or materials. A producing party seeking to designate such documents or materials may do so by giving written notice to the receiving party. Upon notice to the receiving party of such failure to designate, the receiving party shall cooperate to restore the confidentiality of the inadvertently undesignated information. No showing of error, inadvertence, or excusable neglect shall be required for re-designation.

## Storage of Protected Information

31.    The recipient of any "CONFIDENTIAL" information, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, or "SPECIAL PROTECTED DATA" that is provided under this protective order shall maintain such information in a reasonably secure and safe manner that ensures that access is limited to the persons authorized under this Order, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information.

**Data Security**

32.     Any person in possession of "CONFIDENTIAL" information, "HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, or "SPECIAL PROTECTED
DATA" shall maintain a written information security program that includes reasonable
administrative, technical, and physical safeguards designed to protect the security and
confidentiality of such "CONFIDENTIAL" information, "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" information, or "SPECIAL PROTECTED DATA", protect
against any reasonably anticipated threats or hazards to the security of such "CONFIDENTIAL"
information, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, or
"SPECIAL PROTECTED DATA", and protect against unauthorized access to
"CONFIDENTIAL" information, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"
information, or "SPECIAL PROTECTED DATA".  To the extent a party or person does not
have an information security program, they may comply with this provision by having the
"CONFIDENTIAL" information, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"
information, or "SPECIAL PROTECTED DATA" managed by and/or stored with eDiscovery
vendors or claims administrators that maintain such an information security program.  If a
receiving party or authorized recipient discovers any loss of "CONFIDENTIAL" information,
"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, or "SPECIAL
PROTECTED DATA" or a breach of security, including any actual or suspected unauthorized
access, relating to another party's "CONFIDENTIAL" information, "HIGHLY
CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, or "SPECIAL PROTECTED
DATA", the receiving party or authorized recipient shall: (1) promptly provide written notice to
disclosing party of such breach; (2) investigate and make reasonable efforts to remediate the
effects of the breach, and provide disclosing party with assurances reasonably satisfactory to
disclosing party that such breach shall not recur; and (3) provide sufficient information about the
breach that the disclosing party can reasonably ascertain the size and scope of the breach.  The
receiving party or authorized recipient agrees to cooperate with the producing party or law

enforcement in investigating any such security incident. In any event, the receiving party or authorized recipient shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access.

## Personally Identifiable Information

33. Personally identifiable information that a party has designated as SPECIAL PROTECTED DATA as defined in paragraph 10 based on its good faith belief that the information is subject to federal, state, or foreign Data Protection Laws, data privacy laws, or other privacy obligations, or any of the information contained therein, shall be handled by counsel for the receiving party with the highest care.

## Production of Privileged or Protected Documents

34. Pursuant to Federal Rule of Evidence 502(d), the production of documents or materials that the producing party thereafter claims to be subject to the attorney-client privilege, work-product immunity, or other protection mandated by local law shall not constitute a waiver of such privilege, immunity, or other protection in this or any other action. After receiving written notice from the producing party that documents or materials subject to the attorney-client privilege, work-product immunity, or other protection have been produced, the receiving party shall not review, copy, or otherwise disseminate the documents or materials, nor shall it disclose their substance. In addition, the receiving party shall return the documents or materials and all copies within five (5) days from receiving notice, or provide written confirmation of the destruction of the original and all copies of the identified documents, including all documents and things generated by a receiving party which documents and things contain information derived from the returned/destroyed materials. The receiving party shall not utilize the information contained in the returned/destroyed documents or materials for any purpose, or disseminate or transmit such information.

(a) If the receiving party wishes to contest that any such document or thing is protected by the attorney-client privilege, work-product immunity, or other protection mandated by local law, the receiving party shall so notify the producing party in writing when the

document or thing is returned to the producing party ("Notice of Designation").

(b)     Within five (5) days after receiving a Notice of Designation, the producing party shall provide to the receiving party for each such document or thing a description of the basis for the claim of privilege, immunity, or other protection.

(c)     Within five (5) days after receiving such description, the receiving party may seek relief from the Court to compel production of such documents and things, the protection of which is still disputed.  In any such motion to compel production of the returned/destroyed document, the receiving party shall not rely upon in any manner or assert as a ground for ordering production the fact, circumstances, or contents of the production.  Any such motion shall be filed under seal.

(d)     The parties may stipulate to extend the time periods set forth in (b) and (c) above.

(e)     Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

(f)     The disclosing party retains the burden—upon challenge pursuant to paragraph (c)—of establishing the privileged or protected nature of the information in question.

(g)     Nothing in this order limits the right of any party to petition the Court for an in camera review.

(h)     This order does not preclude a party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule of Evidence 502(a) apply when the disclosing party uses or indicates that it may use information produced under this order to support a claim or defense.

(i)     Under this order, the provisions of Federal Rule of Evidence 502(b) are inapplicable.

### Challenges to Protected Information Designation

35.     A party shall not be obligated to challenge the propriety of a Protected

Information designation at the time of production of the designated materials, and a failure to do so shall not preclude a subsequent challenge thereto. In the event that a party disagrees at any time with a Protected Information designation made by another party, the parties shall make a good-faith attempt to resolve the dispute on an informal basis. If the parties cannot resolve the dispute, the objecting party may seek appropriate relief from the Court, and the designating party shall have the burden of proving that its Protected Information designation is proper.

### Filing of Protected Information

36.     If a party deems it necessary to submit Protected Information to the Court, the party shall file or designate such information under seal in accordance with D. Del. LR 5.1.3, and nothing in this Order shall preclude the producing party from requesting that the Court seal that party's Protected Information. The sealing of the information shall remain in effect until further order of the Court. A second copy of any pleading or paper specifically intended for review by the Court may be hand-delivered to the Court's chambers appropriately marked, in order to assure that the same is brought promptly to the Court's attention.

37.     The Clerk of the Court is directed to maintain under seal any pleading, motion, brief, memorandum, exhibit, affidavit, declaration, transcript, response to a discovery request, or other paper filed with the Court that has been designated, in whole or in part, as containing or revealing Protected Information.

38.     Nothing in this Order shall prevent a party from using any document, material or other information that is designated as Protected Information under this Order at a hearing, trial or other court proceeding in this action, provided such use is otherwise consistent with the terms of this Order, and such document, material or other information shall not lose its confidential status through such use. The parties shall take all steps permitted by the Court and reasonably required to protect the confidentiality of such designated information during such use.

### Advice to Clients

39.     Nothing in this protective order shall bar or otherwise restrict an attorney herein from rendering advice to his or her client with respect to this action and, in the course thereof,

referring to or relying upon his or her examination of Protected Information. In rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose any Protected Information if such disclosure would be contrary to the provisions of this protective order.

### Discoverability of Expert Materials

40. Discovery of communications between counsel and any independent expert or consultant retained or specially employed by that counsel shall be limited to factual information, assumptions provided by counsel and relied upon by the expert, analyses, documents, expert compensation, and data considered or relied on by the expert in rendering the opinions expressed in an expert report or at trial. Except as otherwise provided herein, all other communications between counsel and the expert relating to the process of preparing an expert report or developing opinions for trial, including all preliminary or draft reports, expert working papers, notes, and communications relating thereto, shall be deemed exempt from discovery and use at trial.

### Third-Party Requests

41. If any third party requests the production of any Protected Information, including but not limited to a request by subpoena, the receiving party in possession of such Protected Information must:

      (a)    Notify the producing party within 7 days of receiving the request; and

      (b)    Take all lawful steps necessary to assert (or permit the Producing Party to assert) all applicable protections, including but not limited to:

            (i)    Permitting the producing party a reasonable opportunity to intervene and be heard, and

            (ii)    Defending the asserted rights, privileges, and immunities if the producing party cannot be heard.

### Other Proceedings

42. By entering this order and limiting the disclosure of information in this case, the

Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's Protected Information pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## **Miscellaneous**

43. No party shall be responsible to another party for any use made of information that was produced and not designated as Protected Information.

44. Documents and things produced or made available for inspection may be subject to redaction, in good faith by the Producing Party, of information that is neither relevant to the subject of this Action nor reasonably calculated to lead to the discovery of admissible evidence, or is subject to the attorney-client privilege or work product immunity. Any such redaction shall be clearly labeled. No redaction for relevance or non-responsiveness shall be made that obscures or otherwise impacts those relevant or responsive portions of a document, including as to any context necessary to a complete understanding, presentation, or calculation of any relevant or responsive portions. All documents redacted based on attorney-client privilege or work product immunity shall be listed alongside their corresponding Bates number in a privilege log stating the basis for such redaction.

45. Nothing here shall prevent the parties from redacting personally identifying information or other information protected under Swiss, German, or UK privacy law, the General Data Protection Regulation, or other foreign laws and regulations. The parties recognize that certain witnesses may be subject to laws concerning data privacy, data secrecy, or cross-border data transfer restrictions that require protections or limitations beyond those described herein. The parties shall work in good faith to address such issues as they arise and to abide by relevant foreign laws and regulations.

46. When the inadvertent or mistaken disclosure of any information contained in any document that the producing party believes is non-responsive is discovered by the producing

party and brought to the attention of the receiving party, the producing party shall promptly produce a properly redacted replacement version of said document to the receiving party. Upon receipt of the replacement version, the receiving party shall immediately return and/or destroy all copies of the original version of said document, and confirm in writing to the producing party that it has done so.

47.     Any production of documents and ESI located abroad, in particular in Europe and Switzerland, will need to comply with local laws, including laws concerning cross-border data transfer, data privacy, and data secrecy protections. Further, there are restrictions on the taking of depositions outside of the United States. Should any such depositions be needed, the parties will meet and confer to try and resolve any issues that might arise.

48.     Nothing in this protective order shall be deemed a concession that foreign law provisions govern in this case or prejudice the right of any party to challenge the appropriateness of any confidentiality designations made under this protective order, including as Protected Data.

49.     Nothing in this protective order shall prejudice the right of any party to oppose production of any information for lack of relevance, privilege, or any ground other than confidentiality.

50.     Nothing in this protective order shall prejudice the right of any party to seek at any time a further order modifying this protective order.

51.     Nothing in this protective order shall prejudice the right of any party to bring before the Court at any time the question of whether any greater or lesser restrictions should be placed upon the disclosure of any Protected Information.

52.     In the event that a new party is added, substituted, or brought in, this protective order will be binding on and inure to the benefit of the new party, along with the corresponding obligations on the new party to maintain the confidentiality of the Protected Information, subject to the right of the new party to seek relief from or modification of this protective order.

53.     Nonparties who produce information in this action may avail themselves of the provisions of this protective order.

54.     Within ninety (90) days after the termination of this action (including any appeals), each document and each other tangible thing that contains or reveals Protected Information and any copies, abstracts, summaries, notes, or other records regarding the contents of any Protected Information shall be either (a) returned to the attorney of record for the producing party or (b) destroyed with a representation of such destruction being made to the attorney of record for the producing party.

55.     Within ninety (90) days after any counsel has withdrawn or otherwise been terminated as counsel of record, said counsel shall likewise return or destroy each document and each other tangible thing in their possession that contains or reveals Protected Information and any copies, abstracts, summaries, notes, or other records regarding the contents of any Protected Information.

56.     Notwithstanding the foregoing, outside counsel and in-house legal representatives may maintain each of the following: each paper filed with the Court together with any exhibits thereto, each deposition transcript together with the exhibits marked at the deposition, each expert report together with any exhibits thereto, all written discovery and responses thereto, each demonstrative used at trial or any other hearing, each trial or hearing transcript, each exhibit used at trial, each item of correspondence, and all drafts, memoranda, and other documents constituting work product which were based upon or which include Protected Information, so long as the terms of this protective order will continue to govern any such retained materials and provided that information protected by data privacy will not be retained. In the event that outside counsel and in-house legal representatives maintain such documents, they shall not disclose material containing any Protected Information to another party or third party absent subpoena or court order.  Outside counsel and in-house legal representatives likewise need not purge their email, document management systems, or back-up storage media, provided, however, that any Protected Information contained in such documents retained by counsel shall remain subject to the protections of this protective order.  No person or Receiving Party is obligated to return or destroy Protected Information contained on electronic backup back-up tapes or other archival media,

which should be treated in accordance with standard retention policies. However, to the extent that any material is accessed from back-up storage media, information protected by data privacy obligations shall be destroyed or returned and legal hold obligations shall be periodically reviewed for necessity and proportionality and information protected by data privacy obligations shall not be retained in perpetuity.

57.     The provisions of this protective order shall survive and remain in full force and effect after the termination of this action (including any appeals). This Court shall retain jurisdiction even after termination of this litigation to enforce this protective order and make such amendments, modifications, deletions, and additions to this protective order as the Court may from time to time deem appropriate.

58.     The provisions of this protective order shall survive and remain in full force and effect after the termination of this action (including any appeals). This Court shall retain jurisdiction even after termination of this litigation to enforce this protective order and make such amendments, modifications, deletions, and additions to this protective order as the Court may from time to time deem appropriate.

59.     This protective order may be amended as need may arise by written agreement of the parties, subject to Court approval.

SMITH, KATZENSTEIN & JENKINS LLP

MCCARTER & ENGLISH, LLP

_____

_____

Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

Daniel M. Silver (No. 4758)
Alexandra M. Joyce (No. 6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff Shilpa Pharma, Inc.*

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*

OF COUNSEL:

OF COUNSEL:

SUGHRUE MION, PLLC
Michael R. Dzwonczyk
Chidambaram S. Iyer
2000 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060
mdzwonczyk@sughrue.com
ciyer@sughrue.com

GIBSON, DUNN & CRUTCHER LLP
Jane M. Love, Ph.D.
Paul E. Torchia
200 Park Avenue
New York, New York 10166
(212) 351-4000
jlove@gibsondunn.com
ptorchia@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
David Glandorf
1801 California Street, Suite 4200
Denver, CO 80202-2642
dglandorf@gibsondunn.com

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>               Plaintiff,<br><br>               v.<br><br>APOTEX INC., ET AL.,<br><br>               Defendant. | C.A. No. 1:20-cv-00133-LPS |

**AGREEMENT TO BE BOUND**

I, _____, declare and state under penalty of perjury that:

1.     My address is _____.

2.     My present employer is _____ and the address of my present employer is _____.

3.     My present occupation or job description is

_____

4.     I have received a copy of the Stipulated Protective Order in this action, which order was entered on _____.

5.     I have carefully read and understand all of the provisions of the Stipulated Protective Order.

6.     I will comply with all of the provisions of the Stipulated Protective Order.

7.     I will hold in confidence, will not disclose to anyone not qualified under the Stipulated Protective Order, and will use only for purposes of this action, any Protected Information that is supplied to me.

8.     At the termination of this action or any time requested by counsel for the party by whom I am employed, I will return each document and each other tangible thing that discloses or

reveals any Protected Information to the attorney who provided such document or other tangible thing to me. Moreover, I will deliver any copies, abstracts, summaries, notes, or other records regarding the contents of any Protected Information to the attorney who provided such Protected Information to me.

9.      I understand that if I violate the provisions of the Stipulated Protective Order, I will be in violation of a Court order and subject to sanctions or other remedies that may be imposed by the Court and potentially liable in a civil action for damages.

10.      I hereby submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcement of the Stipulated Protective Order.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: _____          _____

# Exhibit C

| From: | Silver, Daniel |
| --- | --- |
| To: | "Eve H. Ormerod"; Joyce, Alexandra; Glandorf, David; Whitcher, Emily M.; Love, Jane M.; Sabanoglu, Kyanna; Torchia, Paul E.; Trenchard, Robert W. |
| Cc: | Chid Iyer; mdzwonczyk@sughrue.com; Neal C. Belgam |
| Subject: | RE: Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion |
| Date: | Tuesday, November 9, 2021 7:39:23 PM |

**[WARNING: External Email]**

Eve,

We disagree that Novartis counsel is similarly situated to Mr. Iyer, but we can let the Court sort that out.  Please send us Shilpa's proposed language for the protective order and then we can set up a time to meet and confer, as I do not believe we have discussed Shilpa's requested relief.

Thanks and best regards,
Dan

**From:** Eve H. Ormerod <eho@skjlaw.com>
**Sent:** Tuesday, November 9, 2021 6:10 PM
**To:** Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>; David Glandorf <DGlandorf@gibsondunn.com>; Emily M. Whitcher <ewhitcher@gibsondunn.com>; Jane Love <jlove@gibsondunn.com>; Kyanna Sabanoglu <ksabanoglu@gibsondunn.com>; Paul E. Torchia <PTorchia@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>
**Cc:** Chid Iyer <ciyer@sughrue.com>; mdzwonczyk@sughrue.com; Neal C. Belgam <NCB@skjlaw.com>
**Subject:** RE: Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion

**\*\*External Message\*\***

Dan,

Per the attached, we told your co-counsel last week that if Novartis insisted on including language in the protective order precluding Mr. Iyer from accessing Novartis confidential information, we would seek the same protection against Novartis counsel from accessing Shilpa confidential information for the same reasons.

Thanks,

**Eve H. Ormerod**

SMITH KATZENSTEIN JENKINS LLP

**Eve H. Ormerod | Partner**
Smith, Katzenstein & Jenkins LLP |  The Brandywine Building
1000 West Street, Suite 1501 |  Wilmington, DE  19801
302.504.1681 Direct  |  302.652.8400 Main  |  202.258.6037 Cell
eormerod@skjlaw.com   |  www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Silver, Daniel <DSilver@McCarter.com>
**Sent:** Tuesday, November 9, 2021 6:03 PM
**To:** Eve H. Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; David Glandorf <DGlandorf@gibsondunn.com>; Emily M. Whitcher <ewhitcher@gibsondunn.com>; Jane Love <jlove@gibsondunn.com>; Kyanna Sabanoglu <ksabanoglu@gibsondunn.com>; Paul E. Torchia <PTorchia@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>
**Cc:** Chid Iyer <ciyer@sughrue.com>; mdzwonczyk@sughrue.com; Neal C. Belgam <NCB@skjlaw.com>
**Subject:** RE: Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion

EXTERNAL EMAIL

Hi Eve,

We are confused by Shilpa's changes.  The only dispute that we are aware of in the PO concerns Novartis's request that Chid Iyer not have access to Novartis's confidential information.  Please confirm that that is the sole dispute that the parties are presenting to Magistrate Judge Fallon.  Once confirmed, we will: (1) get back to you on the joint motion; and (2) send you a proposed final PO with the disputed provisions bracketed that both parties can use with their letters.

Thanks and best regards,
Dan

**From:** Eve H. Ormerod <eho@skjlaw.com>
**Sent:** Tuesday, November 9, 2021 5:02 PM
**To:** Silver, Daniel <DSilver@McCarter.com>; Joyce, Alexandra <ajoyce@mccarter.com>; David Glandorf <DGlandorf@gibsondunn.com>; Emily M. Whitcher <ewhitcher@gibsondunn.com>; Jane Love <jlove@gibsondunn.com>; Kyanna Sabanoglu <ksabanoglu@gibsondunn.com>; Paul E. Torchia <PTorchia@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>
**Cc:** Chid Iyer <ciyer@sughrue.com>; mdzwonczyk@sughrue.com; Neal C. Belgam <NCB@skjlaw.com>
**Subject:** RE: Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion

**\*\*External Message\*\***

Dan,

Attached are our edits to the draft motion.  The teleconference dates that you proposed work for us.  Please let me know if I can sign and file for you.

With respect to the letters due after the Court sets a teleconference, based on the nature of the issue, it is Shilpa's understanding that both parties will be filing an opening letter and both parties will be filing a responsive letter.

Thanks,

**Eve H. Ormerod**



**Eve H. Ormerod | Partner**

Smith, Katzenstein & Jenkins LLP  |  The Brandywine Building

1000 West Street, Suite 1501  |  Wilmington, DE  19801

302.504.1681 Direct  |  302.652.8400 Main  |  202.258.6037 Cell

eormerod@skjlaw.com  |  www.skjlaw.com

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** Silver, Daniel <DSilver@McCarter.com>
**Sent:** Tuesday, November 9, 2021 2:31 PM
**To:** Eve H. Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; David Glandorf <DGlandorf@gibsondunn.com>; Emily M. Whitcher <ewhitcher@gibsondunn.com>; Jane Love <jlove@gibsondunn.com>; Kyanna Sabanoglu <ksabanoglu@gibsondunn.com>; Paul E. Torchia <PTorchia@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>
**Cc:** Chid Iyer <ciyer@sughrue.com>; mdzwonczyk@sughrue.com; Neal C. Belgam <NCB@skjlaw.com>
**Subject:** RE: Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion

EXTERNAL EMAIL

Hi Eve, I hope all is well.

Please find attached our revisions to the proposed joint motion.  We have revised the description of the dispute to make it neutral/non-argumentative, as the court expects.  We have also updated the proposed dates for the hearing to reflect our availability.  Please let us know Shilpa's thoughts on this version.  We reserve the right to make further changes prior to filing.

Thanks and best regards,
Dan

**From:** Eve H. Ormerod <eho@skjlaw.com>
**Sent:** Tuesday, November 9, 2021 11:33 AM

**To:** Joyce, Alexandra <ajoyce@mccarter.com>; Silver, Daniel <DSilver@McCarter.com>; David Glandorf <DGlandorf@gibsondunn.com>; Emily M. Whitcher <ewhitcher@gibsondunn.com>; Jane Love <jlove@gibsondunn.com>; Kyanna Sabanoglu <ksabanoglu@gibsondunn.com>; Paul E. Torchia <PTorchia@gibsondunn.com>
**Cc:** Chid Iyer <ciyer@sughrue.com>; Eve H. Ormerod <eho@skjlaw.com>; mdzwonczyk@sughrue.com; Neal C. Belgam <NCB@skjlaw.com>
**Subject:** Shilpa Pharma, Inc. v. Novartis Pharms., 21-558 - draft joint motion

**\*\*External Message\*\***

Counsel for Novartis:

Attached please find a draft joint motion for teleconference to resolve a protective order dispute. Please provide your comments, particularly with respect to the issue Novartis intends to bring before the Court, and either confirm that the three dates proposed by Shilpa work for you or provide alternatives.  Shilpa reserves the right to revise the draft after receiving Novartis' comments.

Thanks,

**Eve H. Ormerod**

**SMITH KATZENSTEIN JENKINS LLP**

**Eve H. Ormerod | Partner**
Smith, Katzenstein & Jenkins LLP | The Brandywine Building
1000 West Street, Suite 1501 | Wilmington, DE  19801
302.504.1681 Direct | 302.652.8400 Main | 202.258.6037 Cell
eormerod@skjlaw.com | www.skjlaw.com
This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

**From:** ded_nefreply@ded.uscourts.gov <ded_nefreply@ded.uscourts.gov>
**Sent:** Friday, November 5, 2021 11:29 AM
**To:** ded_ecf@ded.uscourts.gov
**Subject:** Activity in Case 1:21-cv-00558-MN Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corporation Oral Order

EXTERNAL EMAIL

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one**

**free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered on 11/5/2021 at 11:28 AM EDT and filed on 11/5/2021

**Case Name:**    Shilpa Pharma, Inc. v. Novartis Pharmaceuticals Corporation

**Case Number:**   1:21-cv-00558-MN

**Filer:**

**Document Number:** 35(No document attached)

**Docket Text:**
**ORAL ORDER - Consistent with the Scheduling Order, the parties contacted Chambers to request a teleconference date for a Protective Order dispute, IT IS HEREBY ORDERED that this dispute is referred to Magistrate Judge Fallon. The parties are directed file Magistrate Judge Fallon's "Motion for Teleconference to Resolve [Protective Order or Discovery] Dispute" which can be found at https://www.ded.uscourts.gov/judge/magistrate-judge-sherry-r-fallon, forms. ORDERED by Judge Maryellen Noreika on 11/5/2021. (dlw)**

**1:21-cv-00558-MN Notice has been electronically mailed to:**

Neal C. Belgam    nbelgam@skjlaw.com, cas@skjlaw.com, vkm@skjlaw.com

Daniel M. Silver    dsilver@mccarter.com, kford@mccarter.com, tpearson@mccarter.com

Paul E. Torchia    ptorchia@gibsondunn.com

Michael R. Dzwonczyk    mdzwonczyk@sughrue.com

Eve H. Ormerod    eormerod@skjlaw.com, cas@skjlaw.com, sbetts@skjlaw.com

Jane M. Love    jlove@gibsondunn.com

David Glandorf    dglandorf@gibsondunn.com

Alexandra M. Joyce    ajoyce@mccarter.com, amiller@mccarter.com, mhitchens@mccarter.com

Chidambaram S. Iyer    ciyer@sughrue.com

Kyanna Sabanoglu    ksabanoglu@gibsondunn.com

Emily M. Whitcher    ewhitcher@gibsondunn.com

**1:21-cv-00558-MN Filer will deliver document by other means to:**

**We are committed to helping you navigate the COVID-19 crisis. Please visit our Coronavirus Resource Center for important updates providing business guidance throughout this pandemic. For immediate questions, please email your McCarter contact or our COVID-19 Taskforce.**

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**We are committed to helping you navigate the COVID-19 crisis. Please visit our Coronavirus Resource Center for important updates providing business guidance throughout this pandemic. For immediate questions, please email your McCarter contact or our COVID-19 Taskforce.**

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**We are committed to helping you navigate the COVID-19 crisis. Please visit our Coronavirus Resource Center for important updates providing business guidance throughout this pandemic. For immediate questions, please email your McCarter contact or our COVID-19 Taskforce.**

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# Exhibit D

| | |
|---|---|
| **From:** | Dzwonczyk, Michael R. |
| **To:** | Love, Jane M. |
| **Cc:** | Silver, Daniel; Iyer, Chid S.; Torchia, Paul E.; Joyce, Alexandra; Glandorf, David; Whitcher, Emily M.; Eve H. Ormerod; Sabanoglu, Kyanna; Neal C. Belgam; Saliba, Raja; Ranney, Christine; Trenchard, Robert W.; Saliba, Raja |
| **Subject:** | RE: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21 |
| **Date:** | Friday, November 5, 2021 3:13:10 PM |

**[WARNING: External Email]**

Dear Jane-

Thank you for your email. Several points you have raised require a response.

First, even if Novartis is involved with settlement agreements through in-house counsel, it is not credible to suggest that its outside counsel have not seen any of the Agreements, or that they have not worked through settlement details with opposing parties, or that they are unaware of their terms and without knowledge of even the material provisions they contain.

Second, Novartis' settlement of cases involving fingolimod hydrochloride likely involves terms that indicate when generic entry will begin, how many generic entrants there may be, and possibly financial terms as well. Financial terms Novartis has agreed to with generic manufacturers informs its view of the value of the Gilenya market. It is irrelevant that earlier settlements involved Novartis patents or other parties. There is not a separate market for Gilenya depending who owns fingolimod hydrochloride patents, and there is nothing dubious about the relevance of existing license terms to Shilpa's damages claim.

Third, you continue to overstate the contents of Shilpa's Interrogatory response. We did not state that "Mr. Iyer had multiple, private discussions with Novartis personnel about that patent" and we dispute your characterization of that response. Our response says nothing about discussions prior to the March 17 meeting and allows for the possibility that a single additional phone conference was conducted. Nowhere does Shilpa's Response state that any substantive discussions occurred, and no Novartis personnel are mentioned other than Mr. Waibel.

We also dispute your statement that the substance of any discussions are directly relevant to core issues in this case. They are not. The Interrogatory response was provided to address your inquiry about Novartis' first awareness of the '816 patent. In the several communications you have provided on this issue, we note that Novartis has not once disputed it had notice of the '816 patent in March, 2016.

The core issues mentioned in your October 28 letter are "willful, induced, and contributory infringement, all of which require proof of Novartis's state of mind." As Mr. Iyer is counsel to Shilpa, he is not a witness to Novartis' state of mind. Your correspondence has not stated how he could be. We suspect a Novartis witness would be more appropriate to address Novartis' state of mind. Notwithstanding, the substance of any discussions of the March 17 meeting (and in any emails to the extent there were any discussions) would be protected under F.R.E. 408 and would not be permitted as testimony before a jury in this case. As a result, we continue to believe your attacks on Mr. Iyer are baseless.

Best,
Mike

---

**From:** Love, Jane M. <JLove@gibsondunn.com>
**Sent:** Thursday, November 4, 2021 5:44 PM
**To:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Cc:** Silver, Daniel <DSilver@mccarter.com>; Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M. <EWhitcher@gibsondunn.com>; Eve H. Ormerod <eho@skjlaw.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C. Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>; Saliba, Raja <rsaliba@sughrue.com>
**Subject:** Re: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

Hi Michael,

Thank you for your email response.  Your effort to liken Mr. Iyer's position to the lawyers at Gibson Dunn and McCarter is mistaken for at least two reasons.

To begin with, as Mr. Iyer must know (and as is reflected in Shilpa's interrogatory responses), Novartis negotiates settlements through in-house counsel.

Moreover, the relevance of negotiations between Novartis and generic drug makers to settle other litigation involving different patents, not at issue in this action, is dubious at best.  Here, Shilpa purports to assert a patent unrelated to those litigations against Novartis.  Shilpa does not dispute that Mr. Iyer had multiple, private discussions with Novartis personnel about that patent.  And, Shilpa indicates that Mr. Iyer was the sole non-Novartis participant in some of those communications.  Those discussions are directly relevant to multiple core issues in this case, as Shilpa has not disputed.

We have already met and conferred on the protective order, so we see no need to do so again unless Shilpa has a concrete, constructive suggestion about how to handle the issues with Mr. Iyer. From your email, we take it that Shilpa has no such suggestion, so we agree that the parties should submit their Protective Order dispute to the Court on Friday by contacting chambers.  Please have your Delaware counsel coordinate with ours.

Best,
Jane

**Jane M. Love, Ph.D.**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Cell +1 917-376-8790 • Office +1 212.351.3922
JLove@gibsondunn.com • www.gibsondunn.com

On Nov 3, 2021, at 3:27 PM, Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com> wrote:

**[WARNING: External Email]**
Hi Jane-

     We do not agree to the proposed added language to the Protective Order, effectively screening Mr. Iyer from accessing Novartis confidential information.  We believe the issue is baseless, as Mr. Iyer is not a potential witness to any fact in this case.  If you insist on its inclusion, we will advise the court that you, Mr. Torchia, Mr. Trenchard, Ms. Ranney, Mr. Silver and Ms. Joyce have all been involved in previous litigations regarding Gilenya®, and that each are material witnesses to settlement discussions and terms relating to royalty rates, generic entry dates, license terms and number of licensees, all of which are relevant to Shilpa's damages claim in this case.  Any rule precluding Mr. Iyer from accessing Novartis confidential information would operate equally against Gibson Dunn and McCarter attorneys from accessing Shilpa confidential information.

     We are available to meet and confer tomorrow on this matter in advance of Friday's submission date for a stipulated protective order or notification of a protective order dispute.

Best,
Mike

**From:** Love, Jane M. <JLove@gibsondunn.com>
**Sent:** Tuesday, November 2, 2021 7:44 PM
**To:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Cc:** Silver, Daniel <DSilver@mccarter.com>; Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M. <EWhitcher@gibsondunn.com>; Eve H. Ormerod <eho@skjlaw.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C. Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>; Saliba, Raja <rsaliba@sughrue.com>
**Subject:** Re: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

Hi Michael,

As a follow up to our call last week, I have attached a revised proposed Protective Order that addresses the lawyer-witness concerns involving Mr. Chid Iyer pending resolution of the issue by the Court.  Novartis has otherwise accepted all of Shilpa's last proposed changes to the Protective Order.  If the suggested edit to the Protective Order is not acceptable to Shilpa, we are open to having another meet and confer to consider alternatives Shilpa would propose that are sufficient to protect Novartis's positions.

If we are not able to come to an acceptable resolution, we do plan to file a motion promptly to have the issue addressed by the Court.  Pending a resolution, you will see that our proposed order screens Mr. Iyer from access to any Novartis confidential materials.

Best,
Jane


**Jane M. Love, Ph.D.**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Cell +1 917-376-8790 • Office +1 212.351.3922
JLove@gibsondunn.com • www.gibsondunn.com


On Oct 29, 2021, at 3:42 PM, Eve H. Ormerod <eho@skjlaw.com> wrote:


 **[WARNING: External Email]**

Dan – ok to sign and file for me.

Thanks,

**Eve H. Ormerod**
<image001.jpg>
**Eve H. Ormerod | Partner**
Smith, Katzenstein & Jenkins LLP  |  The Brandywine Building
1000 West Street, Suite 1501  |  Wilmington, DE  19801
302.504.1681 Direct  |  302.652.8400 Main  |  202.258.6037 Cell
eormerod@skjlaw.com   |   www.skjlaw.com
This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please

contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

---

**From:** Silver, Daniel <DSilver@McCarter.com>
**Sent:** Friday, October 29, 2021 3:39 PM
**To:** 'Dzwonczyk, Michael R.' <mdzwonczyk@sughrue.com>; 'Love, Jane M.' <JLove@gibsondunn.com>; Eve H. Ormerod <eho@skjlaw.com>
**Cc:** Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M. <EWhitcher@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C. Belgam <NCB@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>; Saliba, Raja <rsaliba@sughrue.com>
**Subject:** RE: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

| EXTERNAL EMAIL |
|---|

Dear All, please find attached a one-week extension stipulation.  **Eve**, please confirm that we may sign for you and file.  Thanks and best regards, Dan

---

**From:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Sent:** Friday, October 29, 2021 3:29 PM
**To:** 'Love, Jane M.' <JLove@gibsondunn.com>
**Cc:** Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Eve H. Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Silver, Daniel <DSilver@McCarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M. <EWhitcher@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C. Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W. <RTrenchard@gibsondunn.com>; Saliba, Raja <rsaliba@sughrue.com>
**Subject:** RE: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

**\*\*External Message\*\***

---

Hi Jane-

Thanks for the note.  We are agreeable to a one-week extension to file the PO.  We appreciate your offer to get us your further comments by early next week.  That will allow the parties time to confer if necessary in advance of next Friday.  Do you want to send over a stip for filing today?  Perhaps we should use your draft of last evening and just change the dates.

Best,
Mike

---

**From:** Love, Jane M. <JLove@gibsondunn.com>

**Sent:** Friday, October 29, 2021 2:23 PM
**To:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Cc:** Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Eve H.
Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Silver, Daniel
<DSilver@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M.
<EWhitcher@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C.
Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W.
<RTrenchard@gibsondunn.com>; Saliba, Raja <rsaliba@sughrue.com>
**Subject:** Re: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

Hi Michael, and thanks for your email.

In general, the last round of changes to the PO looked ok to us, until this issue arose.  We suggest at
least a week extension to the PO to give us a chance to consider if the PO should be further modified
or if there are other steps we should take that might avoid having to prematurely burden the Court
with a dispute.  We can get you our thoughts on that by early next week, after we've had a chance to
consult with our client.  As you know, parts of our client's operations are in Switzerland, so we need
some time to coordinate with them.  Let us know your views.

Best,
Jane

**Jane M. Love, Ph.D.**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Cell +1 917-376-8790 • Office +1 212.351.3922
JLove@gibsondunn.com • www.gibsondunn.com

On Oct 29, 2021, at 1:28 PM, Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com> wrote:

[WARNING: External Email]
Hi Jane-

        Thank you for your letter of today.  We still fail to see the connection between the issues you
have raised and the Protective Order that is due today.  Nor does your letter contain proposed
revisions to the Protective Order related to your concerns about Mr. Iyer.  Mr. Iyer is counsel to
Shilpa and not a witness in this case.  We do not understand your insistence that he is some kind of
material witness.  In any event, the Protective Order as presently proposed allows for its
modification in Paragraphs 50 and 51, which state:

50.  Nothing in this protective order shall prejudice the right of any party to seek at any time
a further order modifying this  protective order.

51.   Nothing in this protective order shall prejudice the right of any party to bring before the
Court at any time the question of whether any greater or lesser restrictions should be
placed upon the disclosure of any Protected Information.

In the event the Protective Order becomes insufficient for Novartis, its modification is
provided for in at least the above Paragraphs.  For reasons stated, we do not believe a further
extension is required for its submission today.  If you are not amenable to the changes we proposed
on Wednesday, we ask that our respective Delaware counsel contact the Court today to advise of a
Protective Order dispute.  If your Delaware counsel does not provide their availability to contact the
Court's judicial administrator this afternoon, our Delaware counsel will have no choice but to call the
Court without them.  Eve will share the dates provided by Judge Noreika's judicial administrator with
both parties.

Best,
Mike

*Michael R. Dzwonczyk*

Sughrue Mion, PLLC | 2000 Pennsylvania Ave., N. W. Washington, DC 20006 | Office: 202-857-3233 | Fax: 202-293-7860
mdzwonczyk@sughrue.com - www.sughrue.com
<image001.jpg>

**Warning: In rare cases, our e-mail filtering software may eliminate legitimate email from clients unnoticed. Therefore,
if your mail contains important instructions, please make sure that we acknowledge receipt of those instructions.**

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be
subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review,
copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail to coordinate retrieval or
deletion of this message. Thank you.

---

**From:** Love, Jane M. <JLove@gibsondunn.com>
**Sent:** Friday, October 29, 2021 10:35 AM
**To:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Cc:** Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Eve H.
Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Silver, Daniel
<DSilver@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M.
<EWhitcher@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C.
Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>; Trenchard, Robert W.
<RTrenchard@gibsondunn.com>
**Subject:** Re: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

Hi Michael,

Thanks for your letter.  Please see attached response.

Best,
Jane




**Jane M. Love, Ph.D.**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Cell +1 917-376-8790 • Office +1 212.351.3922
JLove@gibsondunn.com • www.gibsondunn.com



On Oct 28, 2021, at 5:50 PM, Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com> wrote:


[WARNING: External Email]

Hi Jane,

Please see the attached correspondence.

Best,
Mike

---

**From:** Love, Jane M. <JLove@gibsondunn.com>
**Sent:** Thursday, October 28, 2021 11:30 AM
**To:** Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com>
**Cc:** Iyer, Chid S. <ciyer@sughrue.com>; Torchia, Paul E. <PTorchia@gibsondunn.com>; Eve H. Ormerod <eho@skjlaw.com>; Joyce, Alexandra <ajoyce@mccarter.com>; Silver, Daniel <DSilver@mccarter.com>; Glandorf, David <DGlandorf@gibsondunn.com>; Whitcher, Emily M. <EWhitcher@gibsondunn.com>; Sabanoglu, Kyanna <KSabanoglu@gibsondunn.com>; Neal C. Belgam <ncb@skjlaw.com>; Ranney, Christine <CRanney@gibsondunn.com>
**Subject:** Re: Case 1:21-cv-00558-MN Shilpa v. Novartis - rev. Draft Protective Order 10-27-21

Hi Michael,

Please see the attached letter.  In view of the issues it raises, we propose entering into a stipulation to extend the parties' time to enter a Protective Order by four weeks, which is necessary to ensure the eventual Protective Order contains appropriate protections and safeguards that address the issues raised in our letter.  Let us know if that works for you and, if so, we will prepare the

stipulation.

Best,
Jane




**Jane M. Love, Ph.D.**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Cell +1 917-376-8790  •  Office +1 212.351.3922
JLove@gibsondunn.com • www.gibsondunn.com


On Oct 27, 2021, at 4:50 PM, Dzwonczyk, Michael R. <mdzwonczyk@sughrue.com> wrote:


 **[WARNING: External Email]**
Counsel-

Attached is a revised draft of the Protective Order, due September 29.  Based on your explanation that Swiss/European Privacy law protections are necessary for documents originating from those jurisdictions, we have withdrawn our objections to that language and to the third tier of confidentiality.

We have also withdrawn our objections to the Data Security Provisions of Paragraph 32 and Miscellaneous Paragraph 55.

The only proposed revisions remaining are in Paragraphs 40 and 48.  As we mentioned on the call, our revisions to Paragraph 40 are intended to track the language of Rule 26(b)(4)(C).  Please let us know if this is acceptable to you.

We are agreeable to Paragraph 47 as you have drafted it.  As a corollary provision, we proposed the addition of Paragraph 48.  You indicated you may be agreeable to its language but needed to confirm.  Please advise if this is acceptable.

With Paragraphs 40 and 48 as the only remaining edits, I trust we will be able to wrap this up in time for Friday's filing.

Best,
Mike

*Michael R. Dzwonczyk*

Sughrue Mion, PLLC | 2000 Pennsylvania Ave., N. W. Washington, DC 20006 | Office: 202-857-3233 | Fax: 202-293-7860
mdzwonczyk@sughrue.com - www.sughrue.com

<~WRD0005.jpg>

**Warning: In rare cases, our e-mail filtering software may eliminate legitimate email from clients unnoticed. Therefore, if your mail contains important instructions, please make sure that we acknowledge receipt of those instructions.**

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail to coordinate retrieval or deletion of this message. Thank you.

<L10997_10-27-21Shilpa v. Novartis_Proposed Protective Order_104815311_1.DOCX>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

<30096891_1.pdf>

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**We are committed to helping you navigate the COVID-19 crisis. Please visit our Coronavirus Resource Center for important updates providing business guidance throughout this pandemic. For immediate questions, please email your McCarter contact or our COVID-19 Taskforce.**

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.